## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

FILED

M.D. LOHMAN, Individually and On
Behalf of all Similarly Situated Persons,

02 JUL 22 AM II: 39

Plaintiff,

v.                                                No.

TAKATA CORP., a business entity of unknown form;
TK HOLDINGS, INC., a business entity of unknown
form; TAKATA INC., a business entity of unknown form;
TAKATA RESTRAINT SYSTEMS INC., a business entity of
unknown form; TAKATA SEAT BELTS, INC., a business
entity of unknown form; TK-TAITO, INC., a business entity of
unknown form; KATSUYAMA KINZOKA, a business entity of
unknown form; TAITO KOGYO INDUSTRIES, a business entity
of unknown form; ISUZU MOTORS LIMITED, a business entity
of unknown form; ISUZU MOTORS of AMERICA, a business
entity of unknown form; NISSAN MOTOR CO., LTD., a business
entity of unknown form; NISSAN NORTH AMERICA, a business
entity of unknown form; HONDA MOTOR COMPANY, LTD., a
business entity of unknown form; AMERICAN HONDA MOTOR
COMPANY, a business entity of unknown form; DAIHATSU
MOTOR CO., LTD, a business entity of unknown form; FUJI
HEAVY INDUSTRIES LTD, a business entity of unknown form;
MAZDA MOTOR CORPORATION, a business entity of unknown
form; MITSUBISHI MOTORS CORPORATION, a business entity
of unknown form; SUZUKI MOTORS CORPORATION, a business
entity of unknown form; FORD MOTOR COMPANY, a business
entity of unknown form; GENERAL MOTORS CORP., a business
entity of unknown form; DAIMLER-CHRYSLER, a business entity
of unknown form; UNITED TESTING COMPANY, INC., a
business entity of unknown form; and DOES 1 through 1000 inclusive,

CIV-02-0868   DJS/WWO

Defendants.

### NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

Pursuant to the provisions of 28 U.S.C. § 1441, Defendant United States Testing

Company Inc. (now known as SGS U.S. Testing Company Inc.) ("U.S. Testing") hereby gives

this Notice of Removal of the within action to the United States District Court for the District of

New Mexico.  In support of this removal, U.S. Testing states as follows:

1.      On June 12, 2002, plaintiff M.D. Lohman ("Plaintiff"), a resident of Bernalillo

County, New Mexico, filed this action in the 1st Judicial District Court, New Mexico (Case

No. D-0101-CV-200201279).  Attached as Exhibit 1 are copies of all process, pleadings, and

orders served upon U.S. Testing in this action.  See 28 U.S.C. § 1446(a).

2.      Plaintiff's Complaint is based upon alleged defects with the TK-52 and A7 series

buckles and their component parts ("TK-52 series seatbelt"), due to their supposed failure to

comply with Federal Motor Vehicle Safety Standard 209, and the claimed conduct on the part of

the Defendants to conceal such alleged defects from New Mexico residents as a result of the

failure to report alleged safety defect information to the United States National Highway Traffic

Safety Administration ("NHTSA").  Plaintiff asserts four causes of action from these allegations.

See Complaint ¶ 37-55.

3.      Based on the foregoing allegations, Plaintiff seeks the following relief:

      a.      "equitable and injunctive relief," including "an Order enjoining

            Defendants from continuing their dissemination of false and

            misleading information;" "engaging in false and misleading

            advertising regarding the TK-52 series buckles;" and "pursuing the

            policies, acts and practices described in th[e] Complaint;

      b.      "[a]n Order requiring disgorgement and/or imposing a constructive

            trust upon Defendants' profits from the sale of TK-52 series

            seatbelts, or the profits received from sales of vehicles equipped

            with the defective buckles, and requiring Defendants to pay

Plaintiff and all members of the Class for any act or practice

declared by this Court to be unlawful;"

c.    compensatory, punitive, and treble statutory damages;

d.    "[t]he costs and disbursements incurred by Plaintiff in connection

with this action;"

e.    attorneys' fees; and

f.    "other and further relief."

<u>See</u> Complaint ¶ 46 & Prayer for Relief.

4.    Plaintiff purports to bring this action individually and on behalf of "[a]ll New Mexico residents who own a vehicle equipped with a TK-52 Series seatbelt." Complaint ¶ 31.

5.    On June 24, 2002, a Summons and Complaint addressed to U.S. Testing, care of its statutory agent, CT Corporation, was received by CT Corporation along with a consent to service form signed by one of Plaintiff's Counsel, James Lyle. U.S. Testing, by and through counsel, returned the consent to service form, thereby completing service upon U.S. Testing. Service was attempted upon Defendants American Honda Motor Co., Inc., Ford Motor Company, General Motors Corporation, and DaimlerChrysler Corporation in the same manner, but, as these Defendants did not return the consent to service form, service has not been effected upon them. Nonetheless, Defendants American Honda Motor Co., Inc., Ford Motor Company, General Motors Corporation, and DaimlerChrysler Corporation concur with and consent to the removal of this action. Each has executed a Written Consent form, which are attached as Exhibit 2.

6.    Based upon information and belief, and a review of the Court records in the state court action referenced in Paragraph 1, above, none of the other Defendants have been served

3

with summons and process, and therefore are not required to join in this Notice of Removal. See Salveson v. Western States Bankcard Ass'n, 731 F.2d 1423, 1429 (9th Cir. 1984).[1]

7.    This Notice of Removal is filed in this Court within thirty (30) days after the initial receipt of the state court Complaint by a Defendant in this action. Accordingly, this Notice of Removal is timely filed under 28 U.S.C. § 1446(b). See Murphy Bros. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999).

8.    None of the Defendants have filed an answer or any other responsive pleading in the state court action. There are no hearings set before the state court from which this case is removed.

## I.    FEDERAL QUESTION JURISDICTION

9.    This Court has original jurisdiction over this case because this civil action is "founded upon a claim or right arising under the Constitution, laws, or treaties of the United States." See 28 U.S.C. § 1331.

10.    Here, this Court has federal question jurisdiction for at least two independent reasons. First, the state law causes of action asserted in the Complaint require the resolution of substantial and essential elements of federal law. Second, Plaintiff alleges fraud upon a federal agency, which arises under, and is preempted by, federal law.

### A.    Resolution Of Substantial And Essential Elements Of Federal Law.

11.    A state law cause of action arises under the laws of the United States where the right to relief under state law requires resolution of a substantial and essential element of federal law. See, e.g., Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for

---

[1] Although unserved, each of the following named Defendants concur with and consent to removal in this action: TK Holdings Inc., Takata Inc., Takata Restraint Systems, Inc., Takata Seat Belts, Inc., TK-Taito, Inc. (correct name TK-Taito LLC), Isuzu Motors America, Inc., Nissan North America, Inc., and Suzuki Motor Corporation, and have executed Written Consents to removal, which also are attached as part of Exhibit 2.

Southern Cal., 463 U.S. 1, 13 (1983); Gully v. First Nat'l Bank, 299 U.S. 109, 112 (1936).

Plaintiff's claims necessarily require the resolution of substantial and essential elements of

federal law, including: (i) determining whether the TK-52 series seatbelt complies with Federal

Motor Vehicle Safety Standard 209;[2] (ii) determining the extent of the Defendants' obligation to

report alleged safety related defect information to the NHTSA pursuant to the Federal Motor

Vehicle Safety Act; (iii) determining whether Defendants violated alleged obligations, if any, to

report alleged safety related defect information to the NHTSA pursuant to the Federal Motor

Vehicle Safety Act; (iv) determining the effect of seatbelt safety investigations and recalls

pursuant to the Federal Motor Vehicle Safety Act; and (v) determining whether the claimed

conduct of U.S. Testing breached the alleged contract with the United States Department of

Transportation as alleged in Paragraph 7 of the Complaint.  These federal issues are essential to

Plaintiff's claims and are substantial enough to confer federal question jurisdiction.  See Ayres v.

General Motors, 234 F.3d 514, 519-20 (11th Cir. 2000) (citing cases).

      12.      Because of the need for a consistent interpretation and application of federal law

regulating seatbelts in passenger cars, multipurpose passenger vehicles, trucks, and buses used in

the United States, there is a specific and compelling federal interest in resolving the federal

issues in Plaintiff's claims in federal court.  See Ormet Corp. v. Ohio Power Co., 98 F.3d 799,

807 (4th Cir. 1996) (substantial federal question relating to Clean Air Act emission allowance

found in state law contract dispute).

      13.      This is particularly so given that Congress may preempt a particular area such that

any claims in a civil complaint covered by that area are necessarily federal in character, and a

---

[2] Pursuant to the Federal Motor Vehicle Safety Act, the Secretary of Transportation promulgated Federal Motor Vehicle Safety Standard 209, see 49 C.F.R. 571.209, which sets forth the safety prerequisites for seatbelts in all passenger cars, multipurpose passenger vehicles, trucks, and buses used in the United States.  See 49 U.S.C. § 30111.

civil action in that area is thus removable based on federal question jurisdiction. See In re Bridgestone/Firestone, Inc. Tire Prods. Liab. Litig., 153 F. Supp. 2d 935, 943-48 (S.D. Ind. 2001).

14.     The Federal Motor Vehicle Safety Act provides a comprehensive federal scheme governing the investigation and recall of subject vehicles and equipment. See, e.g., 49 U.S.C. §§ 30118, 30119, 30120, 30166. Plaintiff's Complaint alleges that the TK-52 series seatbelt has been the subject of investigation by the NHTSA and that certain buckles have been recalled pursuant to the Federal Motor Vehicle Safety Act. See Complaint ¶¶ 16, 18, 19, 20. Moreover, one of Plaintiff's Counsel, The Kick Law Firm, sent two letters – one in February and one in March of this year – to the NHTSA advising it of the same factual matters asserted in the Complaint and requesting that the NHTSA open a defect investigation. See Affidavit of Al R. Bernat ("Bernat Affidavit") ¶ 4, attached as Exhibit 3. In June, 2002, Defendants TK Holdings Inc. and Isuzu Motors America, Inc. received letters from the NHTSA advising them that a Recall Query had been opened with respect to the "seatbelt release buckle assembly" for Model Year 1994 Isuzu Rodeo, Pickup and Amigo vehicles. See id. ¶ 5. The responses of Defendants TK Holdings Inc. and Isuzu Motors America, Inc. to the NHTSA's Recall Query are due shortly.

15.     Plaintiff's Complaint further alleges that "[t]he true nature of the 52 Series belts installed and sold by Defendants in the Subject Vehicles requires that these belts be replaced with other, safe and defect-free belts, or that the Subject Vehicles no longer be used." See Complaint ¶ 51; see also Prayer for Relief. Thus, Plaintiff's Complaint, in essence, seeks to have the Court determine whether the vehicles with the 52 series belts are unsafe and effectuate a de facto recall of all TK-52 series seatbelts, at the very time the NHTSA is executing upon its federal statutory obligations.

16.     Such a court ordered recall would directly conflict with and frustrate the Federal Motor Vehicle Safety Act.  See Bridgestone/Firestone, Inc. Tire Prods. Liab. Litig., 153 F. Supp. 2d at 943-48; see also Lilly v. Ford Motor Co., No. 00 C 7372, 2002 WL 84603, at *4-5 (N.D. Ill. Jan. 22, 2002).  Inasmuch as the claims in Plaintiff's Complaint seeking a court ordered recall directly conflict with the current actions of the NHTSA under the comprehensive federal scheme set forth in the Federal Motor Vehicles Safety Act governing the recall of subject vehicles and equipment, they are preempted, and the federal interest in resolving Plaintiff's claims in federal court is even more compelling.

**B.     Plaintiff Alleges Fraud Upon A Federal Agency.**

17.     Plaintiff alleges that "Takata and the automobile manufacturer defendants failed to meet their obligations to report safety related defect information to the NHTSA and thereby concealed important safety information from consumers in New Mexico and throughout the United States." See Complaint ¶ 23.  This allegation, coupled with Plaintiff's de facto recall and punitive damages allegations, see id. ¶¶ 51, 53, 54, 55, assert fraud upon a federal agency claims, which arise under, and are preempted by, federal law.  See Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341 (2001).

18.     As Plaintiff's Complaint necessarily raises questions of the interpretation and application of the laws of the United States, it is subject to removal to this Court under 28 U.S.C. § 1441 without regard to the citizenship or residence of the parties.

19.     This Court may exercise supplemental jurisdiction over any non-federal question state law claims in the Complaint pursuant to 28 U.S.C. § 1367.

## II.    DIVERSITY JURISDICTION

20.    This Court also has original jurisdiction because the diversity-of-citizenship and amount-in-controversy requirements of 28 U.S.C. § 1332 are satisfied.

### A.    The Proper Parties In This Action Are Citizens Of Different States.

21.    Named Plaintiff M.D. Lohman is a citizen of the State of New Mexico.  See Complaint ¶ 1.

22.    None of the named Defendants is a citizen of the State of New Mexico, where Plaintiff has brought this action.  See 28 U.S.C. § 1441(b).  The Defendants, corporate entities, are incorporated and have their principal place of business as follows:

| Defendant | Jurisdiction of Incorporation | Principal Place Of Business |
|---|---|---|
| Takata Corporation | Japan | Tokyo, Japan |
| TK Holdings Inc. | Delaware | Greensboro, North Carolina |
| Takata Inc. | Delaware | Not applicable (merged up to TK Holdings Inc.) |
| Takata Restraint Systems, Inc. | Delaware | Greensboro, North Carolina |
| Takata Seat Belts, Inc. | Delaware | San Antonio, Texas |
| TK-Taito, Inc. (correct name TK-Taito LLC) | Delaware | San Antonio, Texas |
| Katsuyama Kinzoka | Japan | Shizuoka, Japan |
| Taito Kogyo Industries | Japan | Aichi, Japan |
| Isuzu Motors Limited | Japan | Tokyo, Japan |
| Isuzu Motors America, Inc. | Michigan | Cerritos, California |

| Defendant | Jurisdiction of Incorporation | Principal Place Of Business |
|---|---|---|
| Nissan Motor Company, Ltd. | Japan | Tokyo, Japan |
| Nissan North America, Inc. | California | Gardenia, California |
| Honda Motor Company, Ltd. | Japan | Tokyo, Japan |
| American Honda Motor Co., Inc. | California | Torrance, California |
| Daihatsu Motor Company, Ltd. | Japan | Osaka, Japan |
| Fuji Heavy Industries Ltd. | Japan | Tokyo, Japan |
| Mazda Motor Corporation | Japan | Hiroshima, Japan |
| Mitsubishi Motors Corporation | Japan | Tokyo, Japan |
| Suzuki Motor Corporation | Japan | Hanamatsu, Japan |
| Ford Motor Company | Delaware | Dearborn, Michigan |
| General Motors Corporation | Delaware | Detroit, Michigan |
| DaimlerChrysler Corporation | Delaware | Auburn Hills, Michigan |
| United States Testing Company, Inc. (now known as SGS U.S. Testing Company Inc.) | New York | Fairfield, New Jersey |

23.     The citizenship of the "Doe" defendants referenced in Paragraph 8 of the Complaint is disregarded for removal purposes. See 28 U.S.C. § 1441(a).

24.     There is complete diversity-of-citizenship between the named Plaintiff and the named Defendants. See Supreme Tribe of Ben Hur v. Cauble, 255 U.S. 356, 363-67 (1921).

**B.     The Amount-In-Controversy Exceeds $75,000.**

25.     The amount-in-controversy for removal jurisdiction is determined by reference to the allegations in the Plaintiff's Complaint. See Laughlin v. Kmart Corp., 50 F.3d 871, 873 (10th Cir. 1995). Where the allegations in the Complaint are inconclusive, the amount-in-

controversy is determined by the allegations in the Notice of Removal.  See id.; see also Hughes v. E-Z Serve Petroleum Marketing Co., 932 F. Supp. 266, 268 (N.D. Okla. 1996) ("Where the face of the petition does not affirmatively establish the requisite amount in controversy, the plain language of Laughlin requires a moving defendant to set forth in the Notice of Removal, not only defendant's good faith belief that the amount in controversy exceeds [$75,000], but also underlying facts in support of defendant's assertion.").

26.     In the present case, the amount-in-controversy exceeds $75,000, exclusive of interests and costs, because, considered in the aggregate, Plaintiff's claim for disgorgement – however meritless – puts well in excess of $75,000 in controversy.  A preponderance of the evidence shows that this action is removable based on diversity of citizenship pursuant to 28 U.S.C. § 1332.  See Varela v. Wal-Mart Stores, East, Inc., 86 F. Supp. 2d 1109 (D.N.M. 2000).

27.     Under New Mexico law, the equitable remedy of disgorgement is directed more toward the prevention of unjust enrichment by a defendant than toward redressing an injury suffered by a plaintiff.  See Purple Onion Foods, Inc. v. Blue Moose of Boulder, Inc., 45 F. Supp. 2d 1255, 1261 (D.N.M. 1999); Miller v. Bourdage, 653 P.2d 177, 180 (N.M. Ct. App. 1982).

28.     Here, Plaintiff alleges that "[t]he Defendants have profited inequitably at the expense of others, including the Class."  Id. ¶ 49.  Plaintiff also alleges that "it would be unjust to permit the Defendants to retain the monetary benefit they have received from the sale of the 52 Series belts and the Subject Vehicles."  Id. ¶ 52.  Thus, Plaintiff seeks "[a]n Order requiring disgorgement and/or imposing a constructive trust upon Defendants' profits from the sale of defective TK-52 series buckles or the profits received from sales of vehicles equipped with the

buckles, and requiring Defendants to pay Plaintiff and all members of the Class for any act or practice declared by this Court to be unlawful." Id. at Prayer for Relief (b)(iii).

29.     The value of the claims of the entire proposed class may be aggregated for purposes of satisfying the jurisdictional amount-in-controversy requirement when the purported members of the class unite to enforce a single title or right in which they have a common and undivided interest. See Gallagher v. Continental Ins. Co., 502 F.2d 827, 831 (10th Cir. 1974). Where proposed classes have a common and undivided interest to disgorgement in the amount of the unjust enrichment, the amount sought to be disgorged may be aggregated for determining the jurisdictional amount-in-controversy. See, e.g., In re Cardizem CD Antitrust Litig., 90 F. Supp. 2d 819, 825-828 (E.D. Mich. 1999); Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft, 48 F. Supp. 2d 37, 41 (D.D.C. 1999).

30.     In the aggregate, the amount of any disgorgement will clearly exceed $75,000. Plaintiff claims there are "thousands upon thousands" of potential class members. See Complaint ¶ 32. "Thousands" is necessarily more than one-thousand; thus, "thousands upon thousands" must be at least four thousand, if not more.

31.     Plaintiff's Complaint asks for the replacement of the seatbelt buckles to address the alleged unjust enrichment. See Complaint ¶ 51. The cost for the replacement of the vehicle set seatbelt assembly for the vehicles identified in Plaintiff's Complaint range between $45.00 and $110.00. Replacing such seatbelt assemblies also will require approximately one half to one hour of labor at authorized dealerships, with such labor averaging approximately $45 per hour. Additional costs associated with replacing TK-52 series seatbelts include shipping and handling of the replacement seatbelt assembly to authorized dealerships, and the cost of notice for the "thousands upon thousands" of persons in New Mexico Plaintiff's Complaint alleges purchased

vehicles with TK-52 series seatbelt assemblies. Given the "thousands upon thousands" of vehicles potentially impacted by the replacement requested in Plaintiff's Complaint, the cost of the requested replacement will exceed $75,000. Thus, the jurisdictional amount-in-controversy is satisfied. See Bernat Affidavit ¶ 3.

32.    This Court may exercise supplemental jurisdiction over any pendant parties in the Complaint pursuant to 28 U.S.C. § 1367.

33.    Pursuant to 28 U.S.C. § 1446(d), a true copy of this notice of removal is being filed with the Clerk of the 1st Judicial District Court New Mexico, and duly served upon Plaintiff's Counsel.

34.    In filing this Notice of Removal, neither U.S. Testing, nor any of the Defendants consenting to removal, waive any defenses available to them in this action or their right to challenge certification of any putative class proposed by Plaintiff.

WHEREFORE, Defendant United States Testing Company Inc. (now known as SGS U.S. Testing Company Inc.) respectfully files this Notice of Removal from the 1st Judicial District Court, New Mexico (Case No. D-0101-CV-200201279) to this Court and requests that this Court make and enter such further orders as may be necessary and proper.

Respectfully submitted,

DINES, GROSS & ESQUIVEL, P.C.

By: _____

Jim Dines, Esq.
Gregory P. Williams, Esq.
Attorney for Defendant United States
Testing Company Inc. (now known as
SGS U.S. Testing Company Inc.)
6301 Indian School Rd. NE, #900
Albuquerque, NM 87110
505-889-4050

12

I HEREBY CERTIFY that a copy of the foregoing Notice of Removal to the United States District Court for the District of New Mexico was served on July **22**, 2002, upon the following by the method indicated:

<u>First Class U.S. Mail, Postage Prepaid At The Following Addresses</u>:

<u>Attorneys for Plaintiff M. D. Lohman</u>:

        James P. Lyle, Esq.
        1116 2nd Street, N.W.
        Albuquerque, New Mexico 87102

        Taras Kick, Esq.
        Daniel O'Leary, Esq.
        Michael D. McLachlan, Esq.
        THE KICK LAW FIRM
        660 South Figueroa Street
        Suite 1800
        Los Angeles, California 90017

<u>DaimlerChrysler Corporation</u>:

        c/o Lewis H. Goldfarb, Esq.
        HOGAN & HARISON L.L.P.
        875 Third Avenue
        New York, New York 10022

<u>TK Holdings Inc., Takata Inc., Takata Restraint Systems, Inc., Takata Seat Belts, Inc., and TK-Taito, Inc. (correct name TK-Taito LLC)</u>:

        c/o Michael H. Carpenter, Esq.
        ZEIGER & CARPENTER LLP
        1600 Huntington Center
        41 South High Street
        Columbus, Ohio 43215

<u>Isuzu Motors America, Inc. and American Honda Motor Co., Inc.</u>:

        c/o Sarah M. Singleton, Esq.
        Andrew S. Montgomery, Esq.
        MONTGOMERY & ANDREWS, P.A.
        Post Office Box 2307
        Santa Fe, New Mexico 87504-2307

John Dillow, Esq.
Todd Rosencrans, Esq.
PERKINS COIE LLP
1201 3rd Avenue, Suite 4000
Seattle, Washington 98101

Nissan North America, Inc.:

c/o E. Paul Cauley, Jr., Esq.
S. Vance Wittie, Esq.
SEDGWICK, DETERT, MORAN & ARNOLD
1717 Main Street, Suite 5400
Dallas, Texas 75201

Ford Motor Company:

c/o Brian C. Anderson, Esq.
O'MELVENY & MYERS LLP
555 13th Street, N.W.
Washington, District of Columbia 20004-1109

General Motors Corporation:

c/o Andrew Schultz, Esq.
Rodey, Dickason, Sloan, Akin & Robb, P.A.
P.O. Box 1888
Albuquerque, NM 87103-1888

Suzuki Motor Corporation:

c/o David A. Kelly, Esq.
BOWMAN & BROOKE
Fifth Street Towers, Suite 2600
150 South Fifth Street
Minneapolis, Minnesota 55402

First Class U.S. Mail, Postage Prepaid At The Address, If Any, In The State Court File:

Takata Corporation

Katsuyama Kinzoka

Taito Kogyo Industries

Isuzu Motors Limited

Honda Motor Company, Ltd.

Daihatsu Motor Company, Ltd.

Fuji Heavy Industries Ltd.

Mazda Motor Corporation

Mitsubishi Motors Corporation

Nissan Motor Company, Ltd.

Gregory P. Williams

# EXHIBIT 1



# CT System

**Service of Process Transmittal Form**
Santa Fe, New Mexico

06/24/2002

TO: R.K. Bridwell Sr. VP, General Counsel
SGS North America Inc.
291 Fairfield Ave.
Fairfield, NJ 07004
EMAIL: KEN_BRIDWELL@SGS.COM

RECEIVED
JUN 2 5 2002

**RE:   PROCESS SERVED IN NEW MEXICO**

FOR        United States Testing Company Inc. Domestic State: NY
           True Name : SGS U.S.Testing Company Inc.

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

1. TITLE OF ACTION:       M.D. LOHMAN, PLAINTIFF vs TAKATA CORP. ET AL, INCLUDING UNITED
                          STATES TESTING COMPANY, INC., DEFENDANTS

2. DOCUMENT(S) SERVED:    NOTICE AND RECEIPT AND ACCEPTANCE OF SERVICE, SUMMONS,
                          COMPLAINT

3. COURT:                 FIRST JUDICIAL DISTRICT COURT, COUNTY OF SANTA FE, NEW MEXICO
                          Case Number D-0101-CV-20021279

4. NATURE OF ACTION:      FRAUDULENT CONCEALMENT

5. ON WHOM PROCESS WAS SERVED:   CT Corporation System, Santa Fe, New Mexico

6. DATE AND HOUR OF SERVICE:     By Regular mail on 06/24/2002 with Postmarked Date 06/21/2002

7. APPEARANCE OR ANSWER DUE:     THIRTY DAYS (30)

8. ATTORNEY(S):           JAMES P. LYLE
                          1116 2ND STREET, NW
                          ALBUQUERQUE, NM 87102

9. REMARKS:        i-Note sent 06/24/2002 to KEN_BRIDWELL@SGS.COM

SIGNED        CT Corporation System

PER           Supervisor of Process /SP
ADDRESS       123 East Marcy Street
              Santa Fe, NM 87501
              SOP WS 0004584792

Information contained on this transmittal form is recorded for C T Corporation System's record keeping purposes only and to
permit quick reference for the recipient. This information does not constitute a legal opinion as to the nature of action, the amount
of damages, the answer date, or any information that can be obtained from the documents themselves. The recipient is
responsible for interpreting the documents and for taking the appropriate action.

## SUMMONS

TO:  UNITED STATES TESTING COMPANY, INC.
     c/o CT CORPORATION
     123 E. Marcy
     Santa Fe, NM  87501

Defendant(s), Greeting:

You are hereby directed to serve a pleading or motion in response to the Complaint within 30 days after service of the Summons, and file the same, all as provided by law.

You are notified that, unless you so serve and file a responsive pleading or motion, the Plaintiff(s) will apply to the Court for the relief demanded in the Complaint.

Attorney or Attorneys For Plaintiff:          James P. Lyle, Esquire
                    Address:                  Law Offices of James P. Lyle, P.C.
                                              1116 2nd Street, N.W.
                                              Albuquerque, NM 87102
                                              (505) 843-8000

WITNESS the Honorable __James A. Hall__ District Judge of said Court of the State of New Mexico and the Seal of the District Court of said County, this 12th day of ___JUNE___, 2002.

JoAnne Vigil Quintana
Court Administrator/District Court Clerk

CLERK OF THE DISTRICT COURT

(SEAL)                        By: __KMuñoz__
                                       Deputy

NOTE:  This summons does not require you to see, telephone or write to the District Judge of the Court at this time.

It does require you or your attorney to file your legal defense to this case in writing with the Clerk of the District Court within 30 days after the summons is legally served on you.  If you do not do this, the party suing may get a Judgment by default against you.

STATE OF NEW MEXICO
COUNTY OF SANTA FE
1ST JUDICIAL DISTRICT COURT

M.D. LOHMAN, Individually and On Behalf of all
Similarly Situated Persons,

Plaintiff,

vs.

CAUSE NO. D-0101-CV-2002-01779

TAKATA CORP., a business entity of unknown form;
TK HOLDINGS, INC., a business entity of unknown form;
TAKATA INC., a business entity of unknown form;
TAKATA RESTRAINT SYSTEMS INC., a business entity of
unknown form; TAKATA SEAT BELTS, INC., a business
entity of unknown form; TK-TAITO, INC., a business entity of
unknown form; KATSUYAMA KINZOKA, a business entity of
unknown form; TAITO KOGYO INDUSTRIES, a business entity
of unknown form; ISUZU MOTORS LIMITED, a business entity
of unknown form; ISUZU MOTORS of AMERICA, a business
entity of unknown form; NISSAN MOTOR CO., LTD., a business
entity of unknown form; NISSAN NORTH AMERICA, a business
entity of unknown form; HONDA MOTOR COMPANY, LTD.,
a business entity of unknown form; AMERICAN HONDA MOTOR
COMPANY, a business entity of unknown form, DAIHATSU
MOTOR CO., LTD, a business entity of unknown form; FUJI
HEAVY INDUSTRIES LTD, a business entity of unknown form;
MAZDA MOTOR CORPORATION, a business entity of unknown
form; MITSUBISHI MOTORS CORPORATION, a business entity
of unknown form; SUZUKI MOTORS CORPORATION, a business
entity of unknown form; FORD MOTOR COMPANY, a business
entity of unknown form; GENERAL MOTORS CORP., a business
entity of unknown form; DAIMLER-CHRYSLER, business entity
of unknown form; UNITED STATES TESTING COMPANY, INC.,
a business entity of unknown form; and DOES 1 through 1000 inclusive,

Defendants.

STATE OF NEW MEXICO          )
                            )ss.
COUNTY OF Bernalillo )

RETURN FOR COMPLETION BY SHERIFF OR DEPUTY:
    I certify that I served the within Summons in said County on the 21st day of June, 2002, by delivering a copy thereof, with copy of Complaint attached, in the following manner:

RETURN FOR COMPLETION BY OTHER PERSON MAKING SERVICE:
    I, being duly sworn, on oath, say that I am over the age of 18 years and not a party to this lawsuit, and that I served the within Summons in said County on the ___ day of _____, 2002, by delivering a copy thereof, with copy of Complaint attached, in the following manner:

_____    To Defendant _____ (used when Defendant receives copy of Summons, is read Summons or Complaint or refuses to receive Summons or hear reading.)

_____    To _____, a person over the age of 15 years and residing at the usual place of abode of Defendant _____, who at the time of such service was absent therefrom.

_____    By posting a copy of the Summons and Complaint in the most public part of the premises of Defendant _____. (used if no person found at dwelling house or usual place of abode.)

__X__    To CT Corporation, an agent authorized to receive service of process of Defendant United States Testing Company, Inc.

_____    To _____, (parent) (guardian) of Defendant _____ (used when Defendant is a minor or an incapacitated person.)

_____    To _____, _____
              Name of Person        Title of Person Authorized to Receive Service
             (used when Defendant is a corporation or association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision.)

Fees: _____
       Signature of Private Citizen Making Service

SHERIFF OF _____
COUNTY _____
STATE OF NEW MEXICO


    Subscribed and sworn to before me this _____ day of _____, 2002.


                                    _____
                                    Notary Public

My Commission Expires: _____

STATE OF NEW MEXICO
COUNTY OF SANTA FE
1ST JUDICIAL DISTRICT COURT


M.D. LOHMAN, Individually and On Behalf of all
Similarly Situated Persons,

Plaintiff,

vs.                                                  CAUSE NO. D-0101-CV-200201279

TAKATA CORP., a business entity of unknown form;
TK HOLDINGS, INC., a business entity of unknown form;
TAKATA INC., a business entity of unknown form;
TAKATA RESTRAINT SYSTEMS INC., a business entity of
unknown form; TAKATA SEAT BELTS, INC., a business
entity of unknown form; TK-TAITO, INC., a business entity of
unknown form; KATSUYAMA KINZOKA, a business entity of
unknown form; TAITO KOGYO INDUSTRIES, a business entity
of unknown form; ISUZU MOTORS LIMITED, a business entity
of unknown form; ISUZU MOTORS of AMERICA, a business
entity of unknown form; NISSAN MOTOR CO., LTD., a business
entity of unknown form; NISSAN NORTH AMERICA, a business
entity of unknown form; HONDA MOTOR COMPANY, LTD.,
a business entity of unknown form; AMERICAN HONDA MOTOR
COMPANY, a business entity of unknown form, DAIHATSU
MOTOR CO., LTD, a business entity of unknown form; FUJI
HEAVY INDUSTRIES LTD, a business entity of unknown form;
MAZDA MOTOR CORPORATION, a business entity of unknown
form; MITSUBISHI MOTORS CORPORATION, a business entity
of unknown form; SUZUKI MOTORS CORPORATION, a business
entity of unknown form; FORD MOTOR COMPANY, a business
entity of unknown form; GENERAL MOTORS CORP., a business
entity of unknown form; DAIMLER-CHRYSLER, business entity
of unknown form; UNITED STATES TESTING COMPANY, INC.,
a business entity of unknown form; and DOES 1 through 1000 inclusive,

Defendants.

**NOTICE OF RECEIPT AND ACCEPTANCE OF SERVICE OF**
**SUMMONS AND COMPLAINT**


TO:   UNITED STATES TESTING COMPANY, INC.
      c/o CT CORPORATION
      123 E. Marcy
      Santa Fe, New Mexico  87501

      The enclosed Summons and Complaint for Individual and Class Action Relief for (1) Fraudulent
Concealment; (2) Unfair Trade Practices; (3) Unjust Enrichment; (4) Constructive Trust; and (5) Punitive Damages
are served pursuant to Rule 1-004 of the New Mexico Rules of Civil Procedure.

You must sign and date the receipt. If you are served on behalf of a corporation, unincorporated association (including a partnership) or other entity, you must indicate under your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your position or title.

If you do not complete and return this form to the sender within twenty (20) days, you (or the party on whose behalf you are being served) may be required to pay any expenses incurred in serving a summons and complaint in any other manner permitted by law.

If you do complete and return this form, you (or the party on whose behalf you are being served) must answer the Complaint within thirty (30) days on the date upon which this notice was mailed, which appears below. If you fail to do so, judgment by default may be taken against you for the relief demanded in the Complaint.

I declare under penalty of perjury, that this Notice and Acceptance of Summons and Complaint was mailed this ___ day of June, 2002.

James P. Lyle

DATE: _6 - 21 - 02_


## RECEIPT AND ACCEPTANCE OF SUMMONS AND COMPLAINT

I hereby acknowledge receipt of the Summons and Complaint in the above captioned matter and hereby accept service of the same on behalf of UNITED STATES TESTING COMPANY, INC., a named defendant in this action, as an authorized representative on behalf of said defendant.

_____
Signature

_____
Relationship To Entity/Authority To Receive
Service of Process

Date: _____

James A. Hall

STATE OF NEW MEXICO
COUNTY OF SANTA FE
1ST JUDICIAL DISTRICT COURT

ENDORSED
First Judicial District Court

JUN 1 2 2002

Santa Fe, Rio Arriba &
Los Alamos Counties
PO Box 2268
Santa Fe, NM 87504-2268

M.D. LOHMAN, Individually and On Behalf of all
Similarly Situated Persons,

Plaintiff,

vs.

CAUSE NO. D-0101-CV- 2002 012 79

TAKATA CORP., a business entity of unknown form;
TK HOLDINGS, INC., a business entity of unknown form;
TAKATA INC., a business entity of unknown form;
TAKATA RESTRAINT SYSTEMS INC., a business entity of
unknown form; TAKATA SEAT BELTS, INC., a business
entity of unknown form; TK-TAITO, INC., a business entity of
unknown form; KATSUYAMA KINZOKA, a business entity of
unknown form; TAITO KOGYO INDUSTRIES, a business entity
of unknown form; ISUZU MOTORS LIMITED. a business entity
of unknown form; ISUZU MOTORS of AMERICA. a business
entity of unknown form; NISSAN MOTOR CO., LTD., a business
entity of unknown form; NISSAN NORTH AMERICA. a business
entity of unknown form; HONDA MOTOR COMPANY, LTD.,
a business entity of unknown form; AMERICAN HONDA MOTOR
COMPANY, a business entity of unknown form, DAIHATSU
MOTOR CO., LTD, a business entity of unknown form; FUJI
HEAVY INDUSTRIES LTD, a business entity of unknown form;
MAZDA MOTOR CORPORATION, a business entity of unknown
form; MITSUBISHI MOTORS CORPORATION, a business entity
of unknown form; SUZUKI MOTORS CORPORATION, a business
entity of unknown form; FORD MOTOR COMPANY, a business
entity of unknown form; GENERAL MOTORS CORP., a business
entity of unknown form; DAIMLER-CHRYSLER, business entity
of unknown form; UNITED STATES TESTING COMPANY, INC.,
a business entity of unknown form; and DOES 1 through 1000 inclusive,

Defendants.

-1-

## COMPLAINT FOR INDIVIDUAL AND CLASS ACTION RELIEF FOR: (1) FRAUDULENT CONCEALMENT;(2) UNFAIR TRADE PRACTICES; (3) UNJUST ENRICHMENT;(4) CONSTRUCTIVE TRUST; and (5) PUNITIVE DAMAGES

COMES NOW Plaintiff, by and through his counsel of record, The Law Offices of James P. Lyle, P.C., and The Kick Law Firm, APC, and offers the following as his complaint against the Defendants.

## PARTY ALLEGATIONS

1.     Plaintiff is a resident of Bernalillo County, State of New Mexico.

2.     Defendants Takata Corp., TK Holdings, Inc., Takata Inc., Takata Restraint Systems Inc., Takata Seat Belts, Inc., and TK-Taito, Inc. (collectively "Takata") are, on information and belief, foreign corporations whose products are sold in the State of New Mexico, and are in the business of designing, manufacturing, testing, distributing, evaluating, inspecting, placing into the stream of commerce, selling, and supplying automotive seat belt restraint systems, and more specifically the seat belt buckles commonly known as the TK-52 and A7 series buckles and their component parts ("TK-52 Series").

3.     Defendants Katsuyama Kinzoka and Taito Kogyo Industries are, on information and belief, foreign corporations which manufactured latches and other component parts for the TK52 series buckles.

4.     Defendants Nissan Motor Company, Ltd. and Nissan North America (collectively "Nissan"), Isuzu Motors Limited, Isuzu Motors of America, and American Isuzu Motors, Inc., (collectively "Isuzu"), Honda Motor Co., Ltd. and American Honda Motor Company (collectively "Honda"), Daihatsu Motor Co., Ltd., Fuji Heavy Industries, Inc., Mazda Motor Corporation, Suzuki Motors Corporation, Ford Motor Company, General Motors Corp., and Daimler Chrysler are, on information and belief, foreign corporations, selling products and doing business in the State of New Mexico, and are in

-2-

the business of assembling, designing, distributing, drafting, evaluating, franchising, inspecting, installing, leasing, maintaining, manufacturing, modifying, placing into the stream of commerce, repairing, replacing, retailing, selling, servicing, supplying, testing and wholesaling of automobiles. Each of these Defendants is a customer of Takata, and, more specifically, each used the TK-52 series seat belt buckles as original equipment in tens and hundreds of thousands of automobiles sold to consumers nationwide, including thousands upon thousands of such vehicles in the State of New Mexico, as more particularly alleged herein. Collectively, the Defendants identified in this paragraph will be referred to as the "Automobile Manufacturer Defendants".

5.    Defendants American Honda Motors Company, General Motors Corporation, Ford Motor Company, Daimler Chrysler Corporation, have designated CT Corporation as their registered agent for service of process, thus making venue proper in this County.

6.    Daimler Chrysler is additionally the successor-in-interest to Chrysler Corporation, a manufacturer and marketer of automobiles that was also a customer of Takata.

7.    Defendant Unites States Testing Company Inc. ("USTC") is a business entity of unknown form operating as a testing laboratory. Among other things, USTC is one of two testing labs under contract with the United States Department of Transportation to perform government testing of seat belts used in passenger automobiles sold in New Mexico and throughout the United States. Plaintiff is informed and believes that Takata and the Automobile Manufacturer Defendants pays USTC to perform tests on Takata seat belts to confirm their compliance with Federal Motor Vehicle Safety Standard 209, and thus allow for their use in passenger automobiles sold in the United States. Plaintiff is further informed and believes that USTC has performed this service for Takata and the Automobile Manufacturer Defendants at all times relevant to this Complaint.

8.   The true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants named herein as Does 1 through 1000, inclusive, are presently unknown to Plaintiff who, therefore, sues these Defendants by these fictitious names.   Plaintiff will seek leave to amend this complaint to allege the true names and capacities of these Defendants, together with such other allegations as appropriate, when Plaintiff has ascertained this information.

9.   Plaintiff alleges on information and belief that, at all material times herein, each Defendant, both named and fictitious, acted within the course and scope of its authority as the agent, servant, employee, and co-conspirator of each of the other defendants.

## FACTUAL ALLEGATIONS

10.   Plaintiff is informed and believes and, on that basis, alleges that Takata began supplying the TK-52 series buckles to its automotive manufacturing customers in the mid-1980s.   The TK-52 series consisted of individual buckles known as the TK-520, TK-521, TK-522, TK-523,  TK-524, and the A7.  Each buckle in the TK-52 series latched and unlatched in the same way, using interchangeable parts.   The differences within the series related to the way the buckles fastened to the vehicles in which they were installed.   For example, the TK-521 has a relatively long wire stalk so that it can be installed as a front seat buckle in vehicles like pick-up trucks and SUVs.   The TK520 is designed to attach directly to webbing, so that it can be installed in back seats.

11.   Plaintiff is informed and believes that in 1985, during a crash test of a Honda Accord equipped with a Takata TK-52 Series seatbelt buckle, the buckle disengaged upon vehicle impact.  In other words, the seat belt tongue came out of the buckle, leaving the crash test dummy essentially unrestrained.

12.   Plaintiff is informed and believes that when Honda presented the problem to Takata, Takata admitted there was a defect in the design of the TK-52 Series buckle and

-4-

stated that it had developed a supposed counter-measure that would be incorporated into future TK-52 Series buckles. However, Takata stated that it was too late to get this design counter-measure into the 1986 model-year Honda Accord, and Takata and Honda then knowingly allowed the 1986 Honda Accord to be marketed and sold with this defective 52 Series buckle.

13.   Plaintiff is informed and believes that TK-52 series buckles containing this identical defect were installed and sold to New Mexico and consumers throughout the United States in millions upon millions of vehicles beginning with the 1986 model year through the 1999 model year and beyond. The affected vehicles include some of the most popular Japanese and foreign vehicles sold in the United States in the last 16 or 17 years including Honda Civics, Accords, Preludes, and Acuras; Mitsubishi Galants, Mirages, Monteros and pick-ups; Chrysler Colt, Conquests, Stealths, and certain model year Ram pick-up trucks; Isuzu Rodeos and Troopers; Nissan 200 SX's and 240SX's, Parhfinders, Sentras, pick-ups, and Infinities; Mazda 323's 929's, MX-6's and MPV Minivans; Subaru Justies and Loyales; Suzuki Samurais and Sidekicks; Ford Festivas; and Geo Metros, Storms and Trackers. These, and all other vehicles which are equipped with TK-52 Series belts are hereafter referred to as the "Subject Vehicles". Plaintiff owns one or more of the Subject Vehicles.

14.   Plaintiff is informed and believes that the supposed counter-measure developed by Takata failed to correct the problem. The problem with the TK-52 series buckles, as demonstrated by Honda in the crash test, is inherent in the design of the buckle, in that it can partially engage under ordinary usage conditions. Furthermore, even the slightest deviation from manufacturing specifications increases the propensity for TK-52 series buckles to partially engage. From the perspective of the user, these buckles will generate the clicking sound of engagement when the user inserts the seat belt tongue into the buckle. However, the buckle will not be fully engaged and may release unintentionally

-5-

during a collision. This fact has been known to all of the Automobile Manufacturer Defendants for many, many years.

15.    Plaintiff is informed and believes that Takata knew as early as the pre-production phase of the TK-52 series that the buckles were susceptible to partial engagement by virtue of their very design, even if they were manufactured according to all design specifications. Despite this knowledge, no changes were made to the design of the TK-52 series to correct this problem.

16.    In May of 1995, Takata was forced to recall its entire line of TK-52 series buckles following a nine month investigation by the United States National Highway Traffic Safety Administration ("NHTSA"). The conclusion of this investigation was that the ABS plastic release button would degrade, then chip apart. The chips would fall into the buckle, and cause the buckle to (1) not latch, (2) not unlatch, or (3) unintentionally unlatch, as, for example, in a collision.

17.    Plaintiff is informed and believes that many of the consumer complaints made to NHTSA concerning the TK-52 series buckles with ABS plastic release buttons were not, in fact, complaints about chipped plastic, but about the inherently defective design of the TK-52 series and its propensity to partially engage in actual use, on the highways and streets of New Mexico and the United States.

18.    NHTSA fined both Honda and Takata for failing to notify the agency about the ABS plastic defect in a timely manner. Honda and Takata allegedly knew of the defect at least five (5) years before NHTSA opened its investigation, but took no action to notify the government or consumers of the problem. This recall campaign involved approximately 8.5 million vehicles made between 1986 to 1991.

19.    Within months of the conclusion of the NHTSA investigation into the supposedly problematic ABS plastic release buttons, Takata, Nissan, and Isuzu were forced to recall approximately 100,000 vehicles containing TK-521 buckles for yet another defect.

In this instance, an internal part called a "latch" was manufactured outside the design specification. This manufacturing defect had the potential to cause an unwanted unlatching during a collision, or, in the words Takata used to report this defect to NHTSA, it could lead to "insufficient restraint during a crash."

20.   In or about September 1996, Takata, Nissan, Isuzu and other Automobile Manufacturer Defendants submitted Part 573 Defect Information Reports (the "Reports") to NHTSA documenting this manufacturing defect within certain lot ranges (the "Recall Range") of the TK-521 buckle manufactured from October through December of 1993 (buckle base code K3X** through K3Z**). This became Campaign Recall No. 96V-170.

21.   Defendants themselves admitted the consequences of this defect were so serious they required an immediate recall of all belts that might possibly be affected by this condition, due to the insidious and lethal threat it posed to consumers and users of these belts.

22.   Plaintiff is informed and believes that the defective latches were manufactured over a much broader period than Takata and the Automobile Manufacturer defendants admitted to NHTSA. Furthermore, because the internal mechanisms of the TK-52 series buckles are all identical, and the parts interchangeable, the defective latches were used not just in TK-521 buckles, but also in TK-520 and TK-522 buckles. The latches used inside the Takata TK52 series buckles are manufactured by Defendants Katsuyama Kinzoku and Taito Kogyo Industries. The latches which Takata reported to NHTSA as being out of specification were manufactured by Katsuyama Kinzoku. Both of these component part manufacturers were intimately involved with all efforts made by Takata and the Automobile Manufacturer Defendants to conceal and minimize the true scope of the danger posed by these belt.

23.   Plaintiff is informed and believes that Takata and the Automobile Manufacturer Defendants failed to meet their obligations to report safety related defect

information to NHTSA and thereby concealed important safety information from consumers in New Mexico and throughout the United States, tens or hundreds of thousands of whom continue to use TK-52 series seat belt buckles in their automobiles, unaware of the buckle's propensity to partially latch and potentially provide insufficient restraint during a crash.

24.     Because of the failure of Takata and the Automobile Manufacturer Defendants to properly investigate and report the problems inherent in the TK-52 series buckles, including those with the defective latches, a substantial number of defective buckles remain in use today, and continue to present a serious and unreasonable risk of harm to all users of these belts.

25.     As mentioned above, Takata has known since the pre-production phase of the TK-52 series that the buckles are subject to partial engagement because of their design and overall intolerance to manufacturing deviations.

26.     In particular, Takata has known that under a variety of actual use conditions, that partial engagement can occur.   Furthermore, Takata has known that partial engagement does occur with TK-52 series buckles in actual use, leaving unsuspecting vehicle occupants effectively unrestrained and at greatly increased risk of serious injury or death in the event of a crash.

27.     Despite this knowledge, Takata has allowed millions of TK 52 series buckles to be sold world-wide, all of which have an identical internal design, and all of which suffer from the same unreasonable risk, without attempting to change the design to address any of the reasons it knew would cause false latching in these belts.

28.     Plaintiff is informed and believes that the Automobile Manufacturer Defendants have known of the problems inherent in the TK-52 series buckles within months or years of the time each began using them in their products.  Plaintiff is further informed and believes, and on that basis alleges, that the Defendants embarked upon a

systematic campaign to deny in all cases that any problem existed, and to refuse to acknowledge the role played by the TK-52 buckles series in causing the injuries and deaths reported to them every year.

29.   Plaintiff is informed and believes that the Defendants embarked on this systematic campaign with the active assistance of Defendant USTC.   Specifically, in the early 1990s, USTC stopped testing TK-52 series buckles for partial engagement, even though such a test was required under Federal Motor Vehicle Safety Standard 209 and for sale on motor vehicles in the United States.

30.   Plaintiff is informed and believes that USTC stopped the partial engagement testing because the TK-52 series buckles could not pass the test and were not in compliance with Federal Motor Vehicle Safety Standard 209.  So, with the knowledge and active consent of Takata and the Automobile Manufacturer Defendants, USTC adopted an internal standard holding that any ejector spring buckle (which all the TK-52 series buckles are) was automatically exempt from partial engagement testing.  Thus, by utilizing this internal standard, USTC, Takata and the Automobile Manufacturer Defendants continued to certify all TK-52 series buckles as compliant with Federal Motor Vehicle Safety Standard 209, even though they were not.

## CLASS ALLEGATIONS

31.   Plaintiff brings this action individually and as a class action pursuant to NMRA, 1-023(C)(4)(b), on behalf of the following individuals and entities ("The Class"):

All New Mexico residents who own a vehicle equipped with a TK-52 Series seatbelt ("Subject Vehicle")

32.   This action is properly maintainable as a class action.  The Class is compromised of thousands upon thousands of persons who purchased or otherwise

acquired a Subject Vehicle. Moreover, joinder of such persons in one action is impracticable, and the disposition of their claims in a class action will provide substantial benefits to both the parties and the Court.

33. A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted, and no unusual difficulties are likely to be encountered in the management of this class action. Since the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually seek redress for the wrongful conduct alleged.

34. There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual class member. The common questions include, *inter alia*, the following:

    a. Whether the 52 Series buckles pose a risk of serious injuries and death due to their propensity to false latch;

    b. Whether Defendants violated the New Mexico Unfair Trade Practices Act by failing to disclose in their various marketing efforts the existence and extent of this defect;

    c. Whether Defendants had an obligation to disclose information regarding the true nature and extent of this danger to persons owning any of the Subject Vehicles;

    d. Whether Defendants have been unjustly enriched at the expense of the Class;

    e. Whether members of the Class sustained actual damages by reason of Defendants' Unfair Trade Practices, fraud and unjust enrichment, and, if so, the proper measure of damages;

f.   The proper method for calculating the damages suffered by Plaintiff and all similarly situated class members;

g.   Whether members of the Class are entitled to injunctive and declaratory relief; and,

h.   Whether punitive damages should be awarded against the Defendants.

35.   Because Plaintiff's claims and the claims of members of the Class all derive from a common nucleus of operative fact, Plaintiff is asserting claims that are typical of the claims for the entire Class, and Plaintiff will fairly and adequately represent and protect the interests of the Class in that he has no interests that are antagonistic to those of the other members of the Class. Plaintiff has retained counsel which is competent and experienced in the prosecution of class action litigation.

36.   Defendants have been aware of the defect for years. Despite their knowledge of the defect, however, Defendants have willfully concealed it from Plaintiff and other members of the Class.

## FIRST CAUSE OF ACTION
### (Fraudulent Concealment)

37.   Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

38.   Defendants knew the true facts regarding the defect, as detailed above, and knew or recklessly disregarded the potential ramifications of disclosing the defect to Plaintiff and Class members, but failed and/or refused to do so, fraudulently concealing and/or omitting the true facts.

39.   Defendants had a duty to disclose the defect to Plaintiff and the other members of the Class by virtue of, among other things, the Defendants': (i) contractual relationship with Class members; (ii) pre-existing knowledge of the defect; (iii) voluntary

issuance of uniformly positive statements about the seatbelts and their safety and dependability; (iv) influence and superiority *vis à vis* the Plaintiff and other members of the Class.

40.   Plaintiff and the other members of the Class, unaware of Defendants' concealment or suppression of said material facts, purchased or acquired at least one vehicle with a Takata seat belt system that contained the defect.  Plaintiff and the other members of the Class could not have discovered, in the exercise of reasonable diligence, Defendants' failure to disclose the true facts concerning the defect in the TK-52 series buckles.  Had Plaintiff and the other members of the Class known of the concealed facts, they would not have purchased or acquired a vehicle with the TK-52 series buckles, or paid as much for the product as they did.

41.   As a proximate result of the foregoing omissions and failures to disclose, Plaintiff and the other members of the Class have suffered damage.

## SECOND CAUSE OF ACTION
### (Violation of the New Mexico Unfair Trade Practices Act)

42.   Plaintiff hereby incorporates by reference each of the preceding paragraphs as though fully set forth herein.

43.   This claim is brought by Plaintiff against Defendants on behalf of himself and on behalf of all of the members of the Class.

44.   This action may be maintained as a class action under § 57-12-10(E).

45.   Defendants have knowingly made false, misleading oral or written statements, visual descriptions or other representations in connection with the sale, lease, rental or loan of the Subject Vehicles which might have, tended to or did deceive or mislead class members, including, but not limited to:

-12-

a.   representing that Subject Vehicles equipped with 52 Series belts are safe and defect-free, when in fact they are subject to the potentially deadly effects of partial engagement;

b.   using exaggeration, innuendo or ambiguity as to the quality and safety of the 52 Series belts, and failing to state that the belts are subject to false latching when doing so deceives or tends to deceive; and

c.   failing to deliver the quality of goods contracted for.

46.   Plaintiff and each of the Class members are therefore entitled to: (a) compensatory damages in an amount to be determined at trial; (b) an Order enjoining Defendants from continuing their dissemination of false and misleading information; (c) treble damages on behalf of Plaintiff, as the named class representative; (d) costs and attorney's fees; (e) punitive damages; and (f) such further relief as the Court deems just and proper under the circumstances.

## THIRD CAUSE OF ACTION
### (Unjust Enrichment)

47.   Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

48.   This claim is brought by Plaintiff against Defendants on behalf of himself and on behalf of all of the members of the Class.

49.   The Defendants have profited inequitably at the expense of others, including the Class.

50.   Specifically, the Defendants have sold 52 Series belts and Subject Vehicles with the knowledge that both original and subsequent purchasers of these vehicles expect and believe that they are purchasing vehicles which are equipped with safe and reliable seatbelts.

-13-

51.   The true nature of the 52 Series belts installed and sold by Defendants in the Subject Vehicles requires that these belts be replaced with other, safe and defect-free belts, or that the Subject Vehicles no longer be used.  In either event, the Defendants have unjustly and inequitably profited at the expense of the Plaintiff and the class members.

52.   Under the circumstances it would be unjust to permit the Defendants to retain the monetary benefit they have received from the sale of the 52 Series belts and the Subject Vehicles.

## FOURTH CAUSE OF ACTION
### (Punitive Damages)

53.   Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

54.   Defendants' conduct, as described above, is willful, wanton, fraudulent, malicious and committed with reckless disregard for the rights and safety of their customers and all persons who subsequently purchase and/or use the Subject Vehicles and 52 Series belts installed therein.

55.   The Court should, as a matter of law and/or equity, enter an award of punitive damages sufficient to punish Defendants, and to deter others from engaging in similar misconduct in the future.

WHEREFORE, Plaintiff, on behalf of himself and the members of the Class, demands judgment as follows:

(a)   An Order determining that this action is a proper class action maintainable under NMRA, 1-023;

(b)   Equitable and injunctive relief:

(i)   enjoining Defendants from pursuing the policies, acts and practices described in this Complaint;

(ii)   enjoining Defendants from engaging in false and misleading advertising regarding the TK-52 series buckles; and

-14-

(iii)   An Order requiring disgorgement and/or imposing a constructive trust upon Defendants' profits from the sale of defective TK-52 series buckles, or the profits received from sales of vehicles equipped with the defective buckles, and requiring Defendants to pay Plaintiff and all members of the Class for any act or practice declared by this Court to be unlawful;

(c)   Compensatory damages in an amount to be determined at trial plus interest as permitted by law;

(d)   Punitive damages in an amount to be determined at trial;

(e)   The costs and disbursements incurred by Plaintiff in connection with this action;

(f)   Plaintiff's attorney's fees; and

(g)   Such other and further relief as the Court deems just and proper.

LAW OFFICES OF JAMES P. LYLE, P.C.

James P. Lyle
1110 2nd Street, N.W.
Albuquerque, New Mexico  87102
(505) 843-8000
(505) 843-8043 - Facsimile

And

THE KICK LAW FIRM, APC

Taras Kick
Daniel O'Leary
Michael D. McLachlan
660 South Figueroa Street
Suite 1800
Los Angeles, CA  90017
(213) 624-1588
(213) 624-1589 - Facsimile

ATTORNEYS FOR PLAINTIFF

-15-

# EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

M.D. LOHMAN, individually and on        :
behalf of all similarly situated persons,    :
                                        :
            Plaintiff,                   :
                                        :          CIVIL ACTION NO. _____
      v.                                :
                                        :          JUDGE _____
TAKATA CORPORATION, et al.,              :
                                        :
            Defendants.                  :

## CONSENT TO REMOVAL

Defendant Ford Motor Company, by and through counsel, respectfully consent to the

removal of the action commenced by M.D. Lohman in the 1st Judicial District Court, New

Mexico, captioned M.D. Lohman v. Takata Corp. et al., Case No. D-0101CV-200201279, to the

United States District Court for the District of New Mexico.

Respectfully submitted,

Brian C. Anderson
O'Melveny & Myers LLP
555 13th Street, N.W.
Washington, D.C. 20004-1109
(202) 383-5300

Attorneys for Defendant Ford Motor
Company

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| M.D. LOHMAN, individually and on behalf of all similarly situated persons, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. _____ |
| | : | |
| v. | : | JUDGE: _____ |
| | : | |
| TAKATA CORPORATION, et al. | : | |
| | : | |
| Defendants. | : | |

## CONSENT TO REMOVAL

Defendant Nissan North America, Inc., by and through counsel, respectfully consent to the removal of the action commenced by M.D. Lohman in the 1st Judicial District Court, New Mexico, captioned M.D. Lohman v. Takata Corp. et al., Case No. D-0101CV-200201279, to the United States District Court for the District of New Mexico.

Respectfully submitted,

_____
E. PAUL CAULEY, JR.
State Bar No. 04018900
S. VANCE WITTIE
State Bar No. 21832980
SEDGWICK, DETERT, MORAN & ARNOLD
1717 Main Street, Suite 5400
Dallas, Texas 75201
(469) 227-8200
(469) 227-8004 Telecopy

ATTORNEYS FOR DEFENDANT
NISSAN NORTH AMERICA, INC.

## CONSENT TO REMOVAL

Defendant General Motors Corporation, by and through counsel, respectfully consents to the removal of the action commenced by M.D. Lohman in the 1st Judicial District Court, New Mexico, captioned <u>M.D. Lohman v. Takata Corp. et al.</u>, Case No. D-0101CV-200201279, to the United States District Court for the District of New Mexico.

Respectfully submitted,

Attorney for Defendant
General Motors Corporation

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

M.D. LOHMAN, individually and on
behalf of all similarly situated persons,                      :

                                                               :

               Plaintiff,          :          CIVIL ACTION NO. _____

                                                               :

     v.                                              :          JUDGE _____

                                                               :

TAKATA CORPORATION, et al.                                     :

                                                               :

               Defendants.          :


### TK HOLDINGS INC., TAKATA INC., TAKATA RESTRAINT SYSTEMS, INC., TAKATA SEAT BELTS, INC., AND TK-TAITO, INC.'S (CORRECT NAME TK-TAITO LLC) <u>CONSENT TO REMOVAL</u>

Defendants TK Holdings Inc., Takata Inc., Takata Restraint Systems, Inc., Takata Seat

Belts, Inc., and TK-Taito, Inc. (correct name TK-Taito LLC), by and through counsel,

respectfully consent to the removal of the action commenced by M.D. Lohman in the 1st Judicial

District Court, New Mexico, captioned *M.D. Lohman v. Takata Corp. et al.*, Case No.

D-0101CV-200201279, to the United States District Court for the District of New Mexico.

                  Respectfully submitted,

                  _____
                  Michael H. Carpenter, Esq.  (0015733)
                  ZEIGER & CARPENTER LLP
                  1600 Huntington Center
                  41 South High Street
                  Columbus, Ohio  43215
                  Telephone:  (614) 365-4100
                  Facsimile:  (614) 365-9145

                  Counsel for Defendants TK Holdings Inc.,
                  Takata Inc., Takata Restraint Systems, Inc.,
                  Takata Seat Belts, Inc., and TK-Taito, Inc.
                  (correct name TK-Taito LLC)

UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

M. D. LOHMAN, individually and on
behalf of all similarly situated persons,

        Plaintiff,                    CIVIL ACTION NO.

    v.

TAKATA CORPORATION, <u>et al.</u>

        Defendants.

<u>CONSENT TO REMOVAL</u>

Defendant Isuzu Motors America, Inc. (incorrectly named in the complaint as "Isuzu

Motors of America"), by and through counsel, respectfully consent to the removal of the action

commenced by M. D. Lohman in the 1st Judicial District Court, New Mexico, captioned <u>M. D.</u>

<u>Lohman v. Takata Corp. et al</u>, Case NO. D-010CV-200201279, to the United States District

Court for the District of New Mexico.

                    Respectfully submitted,

                    MONTGOMERY & ANDREWS, P.A.

                    By _____

                    Sarah M. Singleton
                    Andrew S. Montgomery
                    Post Office Box 2307
                    Santa Fe, New Mexico 87504-2307
                    (505) 982-3873

                    PERKINS COIE LLP
                    John Dillow
                    Todd Rosencrans
                    1201 3rd Avenue, Suite 4000
                    Seattle, WA 98101
                    (206) 583-8888

                    Attorneys for Isuzu Motors America, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

M. D. LOHMAN, individually and on
behalf of all similarly situated persons,

        Plaintiff,                        CIVIL ACTION NO.

   v.

TAKATA CORPORATION, et al.

        Defendants.

## CONSENT TO REMOVAL

Defendant American Honda Motor Co., Inc., by and through counsel, respectfully

consent to the removal of the action commenced by M. D. Lohman in the 1st Judicial District

Court, New Mexico, captioned M. D. Lohman v. Takata Corp. et al, Case NO. D-010CV-

200201279, to the United States District Court for the District of New Mexico.

                        Respectfully submitted,

                        MONTGOMERY & ANDREWS, P.A.

                        By _____

                            Sarah M. Singleton
                            Andrew S. Montgomery
                            Post Office Box 2307
                            Santa Fe, New Mexico 87504-2307
                            (505) 982-3873

                            Michael W. Davis
                            David Johnson
                            Sidley Austin Brown & Wood
                            Bank One Plaza
                            10 South Dearborn Street
                            Chicago, IL 60603
                            (312) 853-7731

                            Attorneys for American Honda Motor Co., Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| M.D. LOHMAN, individually and on behalf of all similarly situated persons, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. _____ |
| | : | |
| v. | : | JUDGE _____ |
| | : | |
| TAKATA CORPORATION, et al. | : | |
| | : | |
| Defendants | : | |

## CONSENT TO REMOVAL

Defendant Daimler Chrysler Corporation, by and through counsel, respectfully consent to the removal of the action commenced by M.D. Lohman in the 1st Judicial District Court, New Mexico, captioned M.D. Lohman v. Takata Corp. et al., Case No. D-0101CV-200201279, to the United States District Court for the District of New Mexico.

Respectfully submitted,

_____
Attorney for Defendant
Daimler Chrysler Corporation

UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| M.D. LOHMAN, individually and on behalf of all similarly situated persons, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. _____ |
| | : | |
| v. | : | JUDGE _____ |
| | : | |
| TAKATA CORPORATION, et al. | : | |
| | : | |
| Defendants. | : | |

## CONSENT TO REMOVAL

Defendant Suzuki Motor Corporation, by and through counsel, respectfully consent to the removal of the action commenced by M.D. Lohman in the 1st Judicial District Court, New Mexico, captioned M.D. Lohman v. Takata Corp. et al., Case No. D-0101CV-200201279, to the United States District Court for the District of New Mexico.

Respectfully submitted,


_David R. Kelly_
BOWMAN AND BROOKE LLP
150 South Fifth Street
Suite 2600
Minneapolis, MN  55402-4244
Telephone:  (612) 339-8682
Facsimile:  (612) 672-3200

Attorney for Defendant Suzuki Motor Corporation

::ODMA\PCDOCS\MSP\214575\1

EXHIBIT 3

UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

M.D. LOHMAN, individually and on : 
behalf of all similarly situated persons, :
                                 :
            Plaintiff,             :      CIVIL ACTION NO. _____
                                   :
      v.                       :      JUDGE _____
                                   :
TAKATA CORPORATION, et al.,    :
                                   :
        Defendants.          :

## <u>AFFIDAVIT OF AL R. BERNAT</u>

STATE OF MICHIGAN        )
                             )    ss:
COUNTY OF OAKLAND    )

      I, Al R. Bernat , first being duly sworn, depose and state that I have personal knowledge of the facts set forth herein and further state as follows:

      1.       I am Group Vice President-Engineering for TK Holdings Inc. ("Takata").

      2.       This Affidavit is submitted in support of the Notice of Removal of the action captioned <u>M.D. Lohman v. Takata Corp. et al.</u>, Case No. D-0101CV-200201279, from the 1st Judicial District Court, New Mexico to the United States District Court for the District of New Mexico.

      3.       The estimated cost for the replacement of the vehicle set seatbelt assembly for the vehicles identified in Plaintiff's Complaint range between $45.00 and $110.00. Replacing such seatbelt assemblies will also require approximately one half to one hour of labor at authorized dealerships, with such labor averaging more than $45 per hour. Additional costs associated with replacing TK-52 series seatbelts include shipping and handling of the replacement seatbelt assembly to authorized dealerships, and the cost of notice for the "thousands upon thousands" of

persons in New Mexico that Plaintiff's Complaint alleges purchased vehicles with TK-52 series seatbelt assemblies. Given the "thousands upon thousands" of vehicles potentially impacted by the replacement requested in Plaintiff's Complaint, the cost of the requested replacement would exceed $75,000.

      4.      Takata has come into possession of a February 6, 2002 letter from lawyers at The Kick Law Firm to Jonathan White at the National Highway Traffic Safety Administration ("NHTSA"), and another March 6, 2002 letter from a lawyer at The Kick Law Firm to Chris Wiacek at NHTSA, requesting that NHTSA open a defect investigation into certain TK-52 series seatbelts manufactured during the 1993 and 1994 calendar years. Upon information and belief, true and accurate copies of these two letters submitted to NHTSA are attached as Exhibits A and B, respectively.

      5.      On or about June 21, 2002, Takata received a letter from Thomas Z. Cooper at NHTSA advising Takata that NHTSA had opened a Recall Query for a certain TK-52 series seatbelt release buckle assembly on Model Year 1994 Isuzu Rodeo, Pickup, and Amigo vehicles, Nissan Pathfinder and D21 Pickup vehicles, and Honda Passport vehicles. A true and accurate copy of Mr. Cooper's letter is attached as Exhibit C. In addition, Takata is aware that at or about the same time Takata received the aforementioned letter, Isuzu Motors America, Inc. received a letter from Thomas Z. Cooper at NHTSA advising Isuzu that NHTSA had opened a Recall Query for a certain TK-52 series seatbelt release buckle assembly

on Model Year 1994 Isuzu Rodeo, Pickup, and Amigo vehicles.  A true and accurate copy of Mr.

Cooper's letter to Isuzu Motors America, Inc. is attached as Exhibit D.

FURTHER AFFIANT SAYETH NAUGHT

_____
Al R. Bernat


Sworn to before me and subscribed in my presence this 18th day of July, 2002.


_____
Notary Public

PATRICIA MARIE FREDERICKS
NOTARY PUBLIC MACOMB CO., MI
MY COMMISSION EXPIRES Jun 23, 2005
ACTING IN OAKLAND COUNTY, MI

Exhibit A

# THE KICK LAW FIRM

660 South Figueroa Street
Suite 1800
Los Angeles, California 90017
### Phone: (213) 624-1588  Fax: (213) 624-1589

## FACSIMILE TRANSMITTAL COVER SHEET

## NUMBER OF PAGES: 7 (including cover sheet)

**DATE:**                    February 5, 2002

**FAX NUMBER:**              (202)366-1767
                            (202)366-7882

**PHONE NUMBER:**

**TO:**                     NHTSA
                            Defects and Recall Information Analysis Division.

**ATTENTION:**              Jonathan White

**FROM:**                   Dan O'Leary

**SUBJECT:**                Takata Corp., TK-521 Seatbelt Buckles

**COMMENTS/INSTRUCTIONS:**

The information contained in this facsimile transmission may be confidential, attorney work product, and protected by the attorney-client privilege. If you are not the intended recipient, please deliver this transmission immediately to its intended recipient. If you have received this facsimile transmission in error, please call the telephone number listed at the top of this page, collect, to arrange for return of the transmission to The Kick Law Firm.

THE KICK LAW FIRM

A PROFESSIONAL CORPORATION

TARAS KICK*
DANIEL O'LEARY
DAWN C. SALAZAR*
*A PROFESSIONAL CORPORATION

660 SOUTH FIGUEROA STREET, SUITE 1800
LOS ANGELES, CALIFORNIA 90017
213 624 1588 / FAX 213 624 1589

February 6, 2002

VIA FACSIMILE AND UPS
Jonathan White, Chief
Defects and Recall Information Analysis Division (NSA-11)
Office of Defects Investigation
Room 5319
National Highway Traffic Safety Administration
Department of Transportation
400 7th Street SW
Washington, D.C. 20590

Re:   Takata TK-521 Seat Belt Buckles,
      VIN# JN8HD17PK22261

Dear Mr. White:

The purpose of this letter is to call your attention to a safety related defect in certain TK-521 model seat belt buckles manufactured by Takata Corp.

These buckles were used in pick-up trucks and sport utility vehicles manufactured by Nissan and Isuzu in the mid-1990s. The defect creates the potential for a partial engagement of the buckle during ordinary, foreseeable usage, leading to the possibility of a buckle failure in a collision.

Certain buckles of this model were previously subjected to a recall campaign designed to address this problem. However, we recently learned that the campaign failed to include many, and perhaps most, of the defective seat belt buckles. Since many of these buckles are still in use, this presents a serious safety problem worthy of NHTSA's attention.

Specifically, in September 1996, Nissan, Takata Corp., and Isuzu submitted Part 573 Defect Information Reports to NHTSA documenting a manufacturing error within certain lot ranges of TK-521 buckles, making them susceptible to partial engagement. The error related to a dimensional defect on an internal part called the latch, which is also sometimes referred to as the latch plate. According to both Takata and the vehicle manufacturers, the dimensional defect could result in a partial engagement, causing the buckle to come unlatched in a collision or heavy braking.

Mr. Jonathan White
· February 6, 2002
Page 2

The recall was assigned Recall No. 96V-170. The recall covered vehicles containing seat belt buckles manufactured during the period from October through December, 1993. The manufacturers told NHTSA in their Part 573 Defect Information Reports that the defect was believed to occur in less than 1% of the vehicles subject to the recall campaign. We believe that was a significant under-reporting of the scope of the problem, both in terms of the percentage of defective buckles, and also in terms of the time period during which these defective buckles were being manufactured.

In connection with a lawsuit titled *Miller v. Nissan Motor Co., Ltd.*, Los Angeles County Superior Court case number BC 231186, we collected a number of exemplar TK-521 seat belt buckles, with lot numbers (representing the date of manufacture) both inside and outside of the campaigned range.

The *Miller* plaintiffs are the driver and front seat passenger in a 1994 Nissan Pathfinder that was involved in a rollover accident. Both plaintiffs were ejected and suffered very serious injuries. Our investigation revealed that both belts may have failed during the rollover, leading to their ejection. Both front seat belts used TK-521 buckles, but neither buckle was within the range of Recall No. 96V-170. Specifically, the driver buckle is gray in color, and bears lot number K3X06; the passenger buckle is also gray in color, and bears lot number K3Y01. According to Nissan's service bulletins related to the recall, these buckles should not have suffered from the dimensional defect. But, given the circumstances of the accident, we believe that one or both buckles was partially engaged at the time of the rollover.

Therefore, we had Thomas Horton, former Director of Transplant Seatbelt Engineering for Takata, Inc., the American arm of Takata, disassemble exemplar TK-521 buckles and measure the latches to determine if the dimensional error existed in the exemplar buckles.

To date, Mr. Horton has disassembled 47 exemplar buckles, 43 of which were manufactured in 1993 or 1994. Of these 43 buckles, twenty were from vehicles within the range campaigned under Recall No. 96V-170, and 23 were from vehicles outside the range. For vehicles within the campaigned range, nine buckles contained lot codes within the population that Takata identified as actually defective. That is, according to the Part 573 reports and the manufacturers' service bulletins, only certain buckles, based on their individual lot numbers, exhibited the dimensional defect, but the recall covered a broader range of vehicles in order to capture all of the defective buckles. So, eleven buckles from vehicles within the campaign range did not have lot numbers subjecting them to

Mr. Jonathan White
February 6, 2002
Page 3

replacement as part of the recall. Thus, nine of the exemplar buckles are from recalled
lots; 34 are from non-recalled lots.

Of initial interest is the fact that one of the buckles from our sampling was a buckle from
a defective lot but was found in a vehicle that was not campaigned. Specifically, a buckle
with a base lot number of K3Y06 was found in an Isuzu Rodeo with a VIN ending
R4350686, which was outside the range of recalled Rodeos. Additionally, we are aware
of a buckle with a lot number of K3X06, which should have been included in the recall,
installed in an Isuzu Amigo that was not part of the recall campaign. This later buckle is
the subject of a litigated case involving an allegation of a partial engagement that caused
permanent injuries. Therefore, as a preliminary matter, it appears that to this day there
are Takata buckles with actual recalled lot numbers that never have been campaigned.

Next, based on all of the examples from our study, there can be no doubt that the recall
failed even to come close to capturing all of the admittedly defective buckles.

Specifically, Mr. Horton's measurements show that five of the nine buckles inside the
recalled lot numbers exhibit the dimensional defect, which is more than a 50% defect rate,
whereas the manufacturers in their report to NHTSA claimed a defect rate of less than
1%. But even more importantly, the measurements have revealed that eight of the 34
buckles from outside the recalled lot numbers exhibit the dimensional defect. In other
words, eight of the exemplar buckles exhibit the dimensional defect, even though Takata,
Nissan, and Isuzu claim that no defective buckles exist outside of the recall range.

These eight defective buckles were manufactured in August and September 1993, and
January, March, April, and May 1994. According to Takata, Nissan, and Isuzu, no
buckles manufactured in these months should exhibit the dimensional defect, but, based
on our testing, almost 25% of them do. A spreadsheet detailing the results of the
measurements of the exemplar buckles is enclosed.

I am not aware of any changes to the design of the buckle in this period which would
mitigate the potential for partial engagement in buckles containing the dimensional
defect. If, as the manufacturers admitted in 1996, the dimensional defect can cause a
partial engagement in the TK-521 buckles built in October, November, and December
1993, it can cause the same problem in buckles manufactured throughout 1993 and 1994.

Mr. Jonathan White
February 6, 2002
Page 4

Given the obvious danger of a partial engagement, in which a motorist or vehicle occupant may wrongly believe he or she is buckled up, NHTSA should open a defect investigation into all TK-521 buckles manufactured *at least* between August 1993 and May 1994, if not for the entirety of both calendar years. Anyone using one of these buckles faces a real risk to their safety.

Thank you for your attention.

Very truly yours,

Dan O'Leary
Taras Kick

Enclosures

This VEHICLE WAS RECALLED but NOT BRought in FOR SERVICE.

| Sample # | Vehicle type | VIN | Source | Position | Buckle base lot | Pass 17.4? | VIN included in recall? | Comments |
|---|---|---|---|---|---|---|---|---|
| A01 | Amigo | R9801296 | Veldman | LH GR | K3901 | YES | YES | RECALL |
| A02 | Amigo | R9801296 | Veldman | RH GR | K3904 | YES | YES | RECALL |
| A03 | Rodeo | R4355303 | B & M | LH GR | K4502 | NO | NO | |
| A04 | Rodeo | R4355303 | B & M | RH GR | K4405 | YES | NO | |
| A05 | Rodeo | R4365303 | Killian | LH GR | K4102 | NO | YES | RECALL |
| A06 | Rodeo | R4333172 | Killian | RH GR | K3209 | YES | YES | RECALL |
| A07 | Rodeo | R4322607 | Gene's | LH GR | K3205 | NO | NO | RECALL |
| A08 | Rodeo | R4322487 | Gene's | RH GR | K3803 | NO | NO | RECALL |
| A09 | Passport | R4416982 | Dillon | LH GR | K4409 | YES | NO | |
| A10 | Passport | R4416982 | Dillon | RH GR | K4411 | YES | NO | |
| A11 | Passport | R4415388 | B & R | LH GR | K4304 | YES | YES | RECALL |
| A12 | Passport | R4415388 | B & R | RH GR | K4401 | YES | YES | RECALL |
| A13 | Passport | S4432220 | Livingston's | LH GR | KA611 | NO | NO | |
| A14 | Passport | S4432220 | Livingston's | RH GR | KA802 | YES | YES | |
| A15 | Pathfinder | RW231977 | Southern | LH BL | K3206 | YES | YES | RECALL |
| A16 | Pathfinder | RW231977 | Southern | RH BL | K3208 | YES | YES | RECALL |
| A17 | Pathfinder | RW207755 | Dillon | LH GR | K3602 | YES | NO | |
| A18 | Pathfinder | RW207755 | Dillon | RH GR | K3605 | YES | NO | |
| A19 | Pathfinder | RW212765 | Action | LH GR | K3901 | NO | NO | |
| A20 | Pathfinder | RW212765 | Action | RH GR | K3807 | YES | NO | Buckle damaged |
| A21 | Pickup | RC417818 | Gene's | LH GR | K4407 | YES | NO | |
| A22 | Pickup | RC417818 | Gene's | RH GR | KA803 | YES | NO | |
| A23 | Pickup | RC346216 | Deercreek | LH GR | K3Y08 | NO | YES | |
| A24 | Pickup | RC346216 | Deercreek | RH GR | K3Y06 | NO | YES | |
| A25 | Pickup | RC383473 | Rick's | LH GR | K4205 | YES | NO | |
| A26 | Pickup | RC383473 | Rick's | RH GR | K4306 | NO | NO | |
| A27 | Passport | R4404433 | Wilkersons | LH GR | K3902 | YES | YES | RECALL |
| A28 | Passport | R4404433 | Wilkersons | RH GR | K3803 | YES | YES | RECALL |
| A29 | Passport | RW202036 | Wilkersons | LH RD | K3604 | YES | NO | |
| A30 | Pathfinder | RW202038 | Wilkersons | RH RD | K3602 | YES | NO | |
| A31 | Pathfinder | RW205234 | Wilkersons | LH BL | K3606 | YES | NO | |
| A32 | Pathfinder | RW205234 | Wilkersons | RH BL | K3604 | YES | NO | |
| A33 | Pathfinder | RW216119 | Wilkersons | LH GR | K3908 | YES | NO | |

FEB-05-2002 18:37 FROM:THE KL___W FIRM     2136241589        810 731 5567       P.007/007

| A34 | Pathfinder | RW216119 | Wilkersons | RH GR | K3909 | YES | NO | |
| A35 | Pathfinder | RW242259 | Wilkersons | LH GR | K4205 | YES | YES | RECALL |
| A36 | Pathfinder | RW242259 | Wilkersons | RH GR | K4205 | YES | YES | RECALL |
| A37 | Pathfinder | RW248121 | Wilkersons | LH GR | K4309 | YES | NO | |
| A38 | Pathfinder | RW248121 | Wilkersons | RH GR | K4309 | YES | NO | |
| A39 | Pickup | RC398145 | Wilkersons | LH GR | K4402 | YES | NO | |
| A40 | Pickup | RC398145 | Wilkersons | RH GR | K4401 | NO | NO | |
| A41 | Rodeo | R4304732 | Wilkersons | LH GR | K3802 | YES | YES | RECALL |
| A42 | Rodeo | R4304732 | Wilkersons | RH GR | K3806 | NO | YES | RECALL |
| A43 | Rodeo | R4335420 | Wilkersons | LH GR | K3208 | YES | YES | RECALL |
| A44 | Rodeo | R4335420 | Wilkersons | RH GR | K3706 | YES | YES | RECALL |
| A45 | Rodeo | R4350886 | Wilkersons | LH GR | K4101 | NO | NO | |
| A46 | Rodeo | R4350886 | Wilkersons | RH GR | K3Y06 | NO | NO | |
| A47 | Rodeo | R4319963 | Wilkersons | RH GR | K3X06 | NO | YES | RECALL |

Exhibit B

# THE KICK LAW FIRM

660 South Figueroa Street
Suite 1800
Los Angeles, California 90017

## Phone: (213) 624-1588  Fax: (213) 624-1589

## FACSIMILE TRANSMITTAL COVER SHEET

## NUMBER OF PAGES: 8 (including cover sheet)

**DATE:**                    March 6, 2002

**FAX NUMBER:**         202-366-7882

**PHONE NUMBER:**    202-366-7042

**TO:**                        NHTSA

**ATTENTION:**          Chris Wiacek

**FROM:**                    Dan O'Leary

**SUBJECT:**               *Takata TK-521 Seat Belt Buckles*

**COMMENTS/INSTRUCTIONS:**

The information contained in this facsimile transmission may be confidential, attorney work product, and protected by the attorney-client privilege. If you are not the intended recipient, please deliver this transmission immediately to its intended recipient. If you have received this facsimile transmission in error, please call the telephone number listed at the top of this page, collect, to arrange for return of the transmission to The Kick Law Firm.

# THE KICK LAW FIRM
### A PROFESSIONAL CORPORATION

Talas Kick*
Daniel O'Leary
Dawn C. Salazar
*A Professional Corporation

660 South Figueroa Street, Suite 1800
Los Angeles, California 90017
213 624 1588 / Fax 213 624 1589

March 6, 2002

VIA FACSIMILE ONLY
Chris Wiacek
Office of Defects Investigation
National Highway Traffic Safety Administration
Department of Transportation
400 7th Street SW
Washington, D.C. 20590

Re:    Takata TK-521 Seat Belt Buckles

Dear Mr. Wiacek:

Per our conversation, I have enclosed the United States Patent for the Takata 52 series seatbelt buckles. If you look at figure 4, the latch is the central piece in the exploded diagram, identified as part number 5. The lock plate, which slides on the latch and secures the latch in the locked position with the tongue engaged in the buckle, is part number 6. The embossments, or stopper pins, are identified as 32 and 32', and are located on the latch.

If you read the description, you will find some differences in terminology. For example, the latch is called the "latch plate," and the lock plate is called the "control member." The dimensional defect leading to the recall of the TK-521 buckles in 1996 involved the distance between the embossments, measured at their nearest point to each other. The design specifications called for a distance of between 17.4 and 17.5 millimeters. The embossments on the defective parts were closer together than the specification required.

I have the actual engineering drawing of the latch in the 521 buckles, which is shaped slightly differently than the latch on the patent. However, the drawing is protected by a confidentiality order, so I am not able to send you a copy.

Should you have any questions, feel free to contact me.

Very truly yours,

Dan O'Leary

Enclosures

# United States Patent [19]

## Takada

[11] Patent Number: **4,575,907**

[45] Date of Patent: **Mar. 18, 1986**

[54] **LATCH BUCKLE FOR SEAT BELT**

[76] Inventor: Juichiro Takada, 12-1, 3 chome, Shinmachi, Setagaya-ku, Tokyo, Japan

[21] Appl. No.: 648,656

[22] Filed: Sep. 7, 1984

[30] **Foreign Application Priority Data**

Sep. 12, 1983 [JP] Japan .................. 58-140297[U]

[51] Int. Cl.⁴ ...................................... A44B 11/25
[52] U.S. Cl. ................................ 24/641; 24/637; 24/643; 24/645
[58] Field of Search ........... 24/633, 637, 641, 643, 24/644, 645

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,182,008 | 1/1980 | Pooget .................. | 24/645 |
| 4,358,879 | 11/1982 | Magyar .................. | 24/641 |
| 4,384,391 | 5/1983 | Lindblad et al. ......... | 24/633 |
| 4,388,746 | 6/1983 | Krautz et al. ........... | 24/643 |
| 4,393,557 | 7/1983 | Schmidt ................. | 24/643 |
| 4,394,792 | 7/1983 | Schmidt ................. | 24/637 |
| 4,454,634 | 6/1984 | Haglund et al. .......... | 24/645 |
| 4,492,007 | 1/1985 | Tolfsen ................. | 24/637 X |

Primary Examiner—Francis K. Zugel
Assistant Examiner—Peter A. Aschenbrenner
Attorney, Agent, or Firm—Brumbaugh, Graves, Donohue & Raymond

[57] **ABSTRACT**

A seat belt latch buckle includes a buckle body that releasably accepts and latches a buckle tongue. The buckle body includes a frame, a latch plate having a latching projection and pivotable in the frame, a release member to release the tongue, and an ejector to eject the released tongue. A control member is slidable on the latch plate between first and second positions. In the first position the control member is engaged between a portion of frame and the latch plate to positively lock the latch plate in the latched position. The release member slides the control member to the second position, in which it no longer prevents the latch plate from moving to the release position, before it engages the latch plate to pivot it and release the tongue.

2 Claims, 4 Drawing Figures



TK00136

**U.S. Patent**   Mar. 18, 1986   Sheet 1 of 2   4,575,907



FIG. 1



FIG. 2

TK00137

07/03/2002 16:35 FAX Case 2:02-cv-00868-MCA-WDS   Document 1   Filed 07/22/02   Page 62 of 93   ☑018
MAR-06-2002 13:08 FROM:THE KIC   AW FIRM      2136241589          202 366 7882          P.005/008



FIG. 3

FIG. 4

TK00138

4,575,907

## 1

### LATCH BUCKLE FOR SEAT BELT

#### DESCRIPTION

##### 1. Field of the Invention

The present invention relates to a latch buckle for the seat belt of a vehicle and, more particularly, to a latch buckle having a buckle body adapted to accept a buckle tongue, said buckle body including a generally U-shaped frame, a generally L-shaped latch plate pivotably supported between the two side walls of the frame and having a latching portion engageable with the tongue, spring means to urge the latch plate to a latched position, a pusher member slidable parallel to the base plate of the frame and engageable with the latch plate to pivot the same to a released position, and an ejector slidable along the base plate to urge the released tongue out of the buckle body.

##### 2. Description of the Prior Art

Various types of latch buckles have been used to connect or release vehicle seat belts. Among the desired characteristics for such buckles are the capabilities of being easily done up and easily released by a small operational force, of being maintained in the latched position, even when a high impact force is applied, and of being simple to manufacture at low cost.

Generally, the latch buckles of the prior art have a latch plate having a latching portion that engages the tongue, the latch plate being urged only by spring force to the latched position. When the force required to release the buckle is reduced by decreasing such spring force, so also is the retaining force between the tongue and the latching portion decreased. Thus, when an impact force, such as caused by a vehicle collision, is applied to the seat belt, the latch plate displaces by an inertial force and releases the tongue from the buckle body. To eliminate such inertial release, the spring force must be very strong, which means an increase in the force required to release the latch plate from the tongue.

In particular, a known seat belt latch buckle has a U-shaped frame having a base and a pair of side walls, a generally L-shaped latch plate pivotably supported by reception of side extensions in triangular-shaped holes in the side walls and having a latching portion engageable with the tongue, a spring urging the latch plate toward the latching position, a release member movable parallel to the frame base and engageable with the latch plate to pivot it out of the latch position and an ejector resiliently urged along the frame base to push the released tongue out of the buckle body. The spring that holds the latch plate in the latched position has to apply a force great enough to prevent the latch plate from releasing the tongue by being moved by an inertial force in a collision. Accordingly, the force required to move the release member to release the latch plate from the tongue is correspondingly large, which can cause difficulties and annoyance to the user.

To alleviate this problem, mechanisms are added to lock the latch plate in the latched position when the tongue is inserted. However, known mechanisms are complicated, and some do not positively retain the latch plate.

#### SUMMARY OF THE INVENTION

It is an object of the present invention to provide the latch buckle of the above-mentioned type with a means to lock the latch plate positively in the latched position

## 2

while remaining ease of operation of the release member with a low force.

The present invention is characterized in that a control member is slidable on the latch plate between a first position in which it is engaged between a portion of the frame and the latch plate to prevent the latch plate from pivoting from the latched position engaging and holding the tongue and a second position in which it allows pivoting of the latch plate to the tongue-release position, and in that the control member has a portion engageable by the release member so that when the release member is moved to release the tongue, it moves the control member to the second position before it engages the latch plate.

As the control member slides into the latch plate locking position (the first position) after the tongue is inserted into the latch body, and also as the control member is inserted between the frame and the latch plate, the impact force and tongue-pulling force is applied through a flat surface of the control member to the frame. Thus, positive locking of the latch plate in the latched position is very simply accomplished.

The invention will become more fully apparent from the following detailed description of one preferred embodiment thereof, given by way of example, taken in conjunction with the accompanying drawings.

#### BRIEF DESCRIPTION OF THE DRAWINGS

FIGS. 1-3 are longitudinal cross-sectional views of the embodiment of the latch buckle according to the present invention showing operational conditions in which:

FIG. 1 is the rest or cocked-and-ready position;
FIG. 2 is latched position;
FIG. 3 is the tongue release position; and
FIG. 4 is an exploded view of the latch buckle shown in FIGS. 1-3.

#### DESCRIPTION OF THE PREFERRED EMBODIMENT

The reference numeral 1 designates a conventional tongue which has a belt-connecting slot 2 at one end, and a latch hole 3 at the other end. A buckle body A adapted to accept and release the tongue 1 comprises a frame 4, a latch plate 5 which is pivotably connected with the frame 4, a control member 6 which is slidable in the frame 4 to control the movement of the latch plate 5, a pusher or release member 7 to release the tongue 1 from the latch plate 5, an ejector 9 which ejects the tongue 1 from the frame 4 by a spring 8, and a cover 10 which is shown in phantom in FIG. 1 to cover the assembled body A. The elements of the buckle body A and the assembly thereof are shown in FIG. 4 in detail.

The frame 4 of the buckle body A is a generally U-shaped plate having a base 4a and side walls 4b and 4c which project upward from the side edges of the base 4a. The side walls 4b and 4c have, moving sequentially from the tongue-accepting end, segmental arc windows 12 and 12', which receive extensions 11 and 11' from the sides of the latch plate 5, pivot holes 14 and 14', which receive pivot shaft portions 13 and 13' of the latch plate 5, and openings 15 and 15' and notches 17 and 17', which in conjunction with openings 15'' in the base plate 4a retain a spring support plate 16 in place. The segmental arc windows 12 and 12' have downwardly projecting lugs 19 and 19' which are accepted in holes

4,575,907

3

18 and 18′ formed in the extensions 11 and 11′ of the latch plate 5 when the latch plate 5 pivots upward to the release position, as described in detail below. The arcuate front edges 12a and 12a′ of the windows 12 and 12′ oppose front edges 11a and 11a′ of the extensions 11 and 11′ of the latch plate 5 with a small clearance so that a tension load applied to the latch plate 5 is transmitted directly to the frame 4.

The central portion of the frame base 4a has an opening 20 which receives the ejector 9 for sliding in the tongue-inserting direction. The rear edge of the opening 20 has a spring seat portion 21 that carries the spring 8 which urges the ejector 9 to push out the tongue 1. Further, the base 4a has a belt-connecting slot 22 to connect the buckle body A with a belt (not shown).

The latch plate 5 is a generally L-shaped plate bent generally along the axis of the pivot shaft portions 13 and 13′ which pivotably support the latch plate 5 in the pivot holes 14 and 14′ of the side walls 4b and 4c of the frame 4. The latch plate 5 has a latch portion 5a which is generally parallel with the frame base 4a. The latch portion 5a has a downwardly extending claw 23 which is engageable with the latch hole 3 of the tongue 1, and the extensions 11 and 11′ which extend out on both sides of the latch portion and are received in the segment arc windows 12 and 12′ of the frame side walls 4b and 4c. A lever portion 5b extends upwards from the pivot shaft portions 13 and 13′ of the latch plate 5. Between the rear face of the lever portion 5b and the spring support plate 16, a compression spring 24 is inserted to urge the latch plate 5 so that the latch portion 5a is rotated about the pivot shaft portions 13 and 13′ to be generally parallel with the frame base plate 4a, as shown by arrow x in FIG. 1. The compression spring 24 only acts to maintain the cocked or ready position shown in FIG. 1, as described in more detail below, so the spring 24 may be a weaker spring than a latch spring of a conventional buckle.

The control member 6, according to the present invention, is a generally flat plate and is slidable on the latch portion 5a of the latch plate 5. The front end of the latch plate 5 has an upwardly projecting hook 27, and the middle portion of the control member 6 has an upwardly projecting hook 26. Between the hooks 26 and 27, a tension spring 28 is connected to urge the control member 6 in the tongue-release direction, i.e. direction U shown in FIG. 1. Both sides of the control member 6 have pivot preventing elements 25 and 25′ which project laterally into the segment arc windows 12 and 12′. The elements 25 and 25′ are large enough to cover the holes 18 and 18′ of the extensions 11 and 11′ of the latch plate 5 when the control member 6 slides forward to the latched position shown in FIG. 2.

The release member 7 comprises an outwardly exposed operating surface 7a at the front end, a lever-engaging surface 7b engageable with the front surface of the lever portion 5b of the latch plate at the rear end, and a control member contact surface 7c adapted to contact with a contact portion 29 of the control member 6. The release member 7 is slidably guided by two guide rods 30 and 30′ which extend forwardly from the spring support plate 16. Springs 31 and 31′ engaged between the release member 7 and the spring support plate 16 urge the release member 7 in the release direction, i.e. arrow U shown in FIG. 1. The relative position of the surface 7b and the control member contact surface 7c is determined such that when the release member 7 is pushed to release the tongue 1, the control member first

contacts the surface 7c and pushes the control member 6 rearward to move the elements 25 and 25′ clear of the holes 18 and 18′ in the latch member 5, and then the surface 7b pushes the lever portion 5b of the latch plate 5 to rotate the latch plate 5 to release the tongue 1, as shown in FIG. 3.

The operating surface 7a of the release member 7 is surrounded by the cover 10, which serves as a stop to limit its movement to the front of the buckle. Inasmuch as the release stroke of the release member 7 is relatively long and the tongue 1 can not be released until the pivot preventing elements 25 and 25′ are moved out from under the end surfaces of the projections 19 and 19′ of the windows 12 and 12′, inadvertent release of the tongue 1 from the buckle body will not occur. Stopper pins 32 and 32′ establish the forward limit of the control member 6.

The ejector 9 on the frame base 4a follows the tongue 1 forward during the releasing operation at the urging of the spring 8. At the forward-most position of the ejector 9, the front part of the ejector intrudes between the projection 23 of the latch plate 5 and the frame base 4a, as shown in FIG. 1, so that rotation of the latch plate 5 in the direction x shown in FIG. 1 is prevented.

The operation of the above-described latch buckle is as follows.

FIG. 1 shows the release position in which the buckle is cocked and ready to accept the tongue 1. The latch plate 5 is urged to rotate to direction x by the spring 24 and the projection 23 of the latch plate 5 rests on the surface of the ejector 9, which is its frontmost position.

The control member 6 is urged forward on the latch plate by the tension spring 28. The projections 19 and 19′ of the windows 12 and 12′ extend into the through holes 18 and 18′ of the latch plate 5, and the pivot preventing elements 25 and 25′ of the control member 6 are bearing against the back edges of the projections 19 and 19′ so that the control member 6 is held rearwardly of its forward-most position.

When the tongue 1 is inserted in the buckle body A, as shown in FIG. 2, the ejector 9 is pushed rearwardly against the spring 8 by the tip of the tongue 1 so that the projection 23 of the latch plate 5 is released from the ejector 9. When the tongue 1 is fully inserted to align the latch hole 3 with the projection 23, the projection 23 moves into the latch hole 3, and the latch plate 5 is rotated by the spring 24 about the pivot shaft portions 13 and 13′ in the direction x shown in FIG. 1. Thus, the tongue 1 is latched to the buckle body A.

When the latch plate 5 on the control member 6 pivots downwardly, the pivot preventing elements 25 and 25′ disengage the rear edges of the projections 19 and 19′ of the windows 12 and 12′. The control member 6 is pulled forward by the tension spring 28 so that the pivot preventing elements 25 and 25′ move forwardly under the projections 19 and 19′, as shown by the arrow U. The pivot preventing elements 25 and 25′ stop under the projections 19 and 19′ of the windows 12 and 12′ so that the holes 18 and 18′ in the latch plate 5 are closed from the projections 19 and 19′ by the pivot preventing elements 25 and 25′. Thus, the latch plate 5 is locked in position by the control member 6, which prevents the latch plate 5 from rotating upwardly in the direction Y, even when an abnormal shock, such as caused by a collision, is applied to the buckle. When a high load is applied to the belt tending to pull the tongue 1 in the release direction U, the load is applied to the projection 23 of the latch plate 5. The load is transmitted from the

TK00140

4,575,907

5

front edge surfaces 11a and 11a' of the latch plate 5 directly to the arcuate front edges 12a and 12a' of the windows 12 and 12' in the frame side walls 4b and 4c. Thus, the slender pivot shaft portions 13 and 13' of the latch plate 5 and the pivot holes 14 and 14' of the frame side walls 4b and 4c are protected from excessive loads.

FIG. 3 shows the releasing process of the tongue 1 from the buckle body A. In the latched position shown in FIG. 2, the operating surface 7c of the release member 7 is moved rearwardly (to the right as shown in FIG. 3) against the return springs 31 and 31'. The surface 7c of the release member 7 engages the contact portion 29 of the control member 6 first and pushes only the control member 6 to the right against the tension spring 28. The pivot preventing elements 25 and 25' are shifted to the right along the ends of the projections 19 and 19' to clear the projections 19 and 19' of the windows 12 and 12' of the frame side walls 4b and 4c. After the control member moves sufficiently to clear the projections 19 and 19', the surface 7b of the release member 7 contacts the front surface of the lever portion 5b of the latch plate 5 and rotates the latch plate 5 against the spring 24. As shown in FIG. 3, as the latch plate 5 rotates, the holes 18 and 18' receive the projections 19 and 19' of the windows 12 and 12', and the projection 23 is released from the latch hole 3 of the tongue 1. The ejector 9 pushes the now released tongue 1 from the buckle body A by the spring 8, and at the front position shown in FIG. 3, a portion of the ejector 9 lies under the projection 23 of the latch plate 5. When the operating force on the release member 7 is released, the release member 7 is pushed to its original position by the springs 31 and 31', as shown in FIG. 1, in which the buckle body A is ready to accept the tongue 1 again. As the release member 7 returns to the original position, the pivot preventing elements 25 and 25' of the control member are urged by the spring 28 into engagement with the edges of the projections 19 and 19' of the windows 12 and 12' of the frame side walls 4b and 4c.

It will be appreciated that the control member, according to the present invention, is slidably engaged on the latch plate, which pivots or rocks by cooperation with the release member. The control member has two positions, i.e. the pivot-preventing position which maintains the latched position of the latch plate and the latch plate releasing position. As the control member slides into the pivot-preventing position, the latch plate is positively maintained in the latched position, and the buckle cannot be released by a high impact force or by

6

a high pulling force which is applied by shock or high inertia, such as caused by a collision. To prevent the inadvertent release, the control member is inserted between the frame member and the latch plate. Thus, a release force is applied only to portions of the control member, and the spring force has no role in keeping the latch plate in the latched position. Thus, the spring 24 which urges the latch plate to the latched position can be relatively weak. Consequently, the operating force to the release member required to release the buckle can be determined from the point of view of making the buckle easy to use.

I claim:

1. A seat belt latch buckle for retaining a buckle tongue in latched position and having a generally U-shaped frame that includes a base and a pair of side walls, a generally L-shaped latch plate pivotally supported in the side walls of the frame by reception of side extensions in generally triangular-shaped holes in the side walls and having a latching portion engageable with the tongue, a spring urging the latch plate to a tongue-latching position, a release member movable parallel to the frame base and engageable with the latch plate to pivot it out of the tongue-latching position to release the tongue, and a tongue ejector member resiliently urged along the frame base to push the released tongue out of the buckle body characterized in that a control member is slidable along the latch plate between a first position in which it engages a portion of the frame and prevents the latch plate from pivoting out of the latching position and a second position free of engagement with the frame to allow pivoting of the latch plate out of the latching position, and in that the release member has a portion engageable with a portion of the control member upon partial movement of the release member toward engagement with the latch plate to move the control member to the second position before moving the latch member to release the tongue.

2. A seat belt latch buckle according to claim 1 and further characterized in that the control member has laterally-extending projections received in the triangular-shaped holes, in that a tab extends downwardly from the upper edge of each hole, in that in the first position of the control member the projections are interposed between the extensions on the latch plate and the tabs, and in that the latch plate has holes that receive the tabs when the latch plate pivots away from the tongue-latching position.

*    *    *    *    *

55

60

65



Exhibit C

U.S. Department
of Transportation

**National Highway
Traffic Safety
Administration**

400 Seventh Street, S.W.
Washington, D.C. 20590

JUN 2 1 2002

**CERTIFIED MAIL
RETURN RECEIPT REQUESTED**

Kazuo Higuchi, Senior Vice President          NSA-12pco
Special Staff to Takata Group President       RQ02-009
TK Holdings, Inc.
Washington D.C. Office
601 13th Street N.W. Suite 350 South
Washington D.C. 20005

Dear Mr. Higuchi:

This letter is to advise you that the Office of Defects Investigation (ODI) of the National
Highway Traffic Safety Administration (NHTSA) has opened a Recall Query (RQ02-009) for
seat belt release buckle assembly that can false latch or release during a crash on Model Year
(MY) 1994 Isuzu Rodeo, Pickup and Amigo vehicles, Nissan Pathfinder and D21 Pickup
vehicles and Honda Passport vehicles. The subject recall is NHTSA recall number 96V-170.

The safety recall involves a certain quantity of model year (MY) 1994 vehicles having Takata
(Type 521) front seat belt buckles that may have latching problems due to incorrectly
manufactured parts. Vehicles built during a certain time period and having certain Vehicle
Identification Numbers (VINs) were recalled and inspected. During the inspection process, seat
belt buckle assemblies that fell within certain lot/date codes were replaced.

To assist us in this investigation, please provide information relating to the subject component
used in all vehicles sold in the United States.

Unless otherwise stated in the text, the following definitions apply to this information request:

    **Subject component**: Takata (Type 521) seat belt release buckle assembly used in MY 1993
    and 1994 vehicles sold in the United States.

    **Alleged defect**: false latching, unintended release, partial engagement, unable to latch,
    release button binding or jamming in the subject component.





People Saving People
www.nhtsa.dot.gov

DOT AUTO SAFETY HOTLINE
888-DASH-2-DOT
888-327-4236

2

**Takata**:  Takata Holdings, Inc., all of its past and present officers and employees, whether assigned to its principal offices or any of its field or other locations, including all of its divisions, subsidiaries (whether or not incorporated) and affiliated enterprises and all of their headquarters, regional, zone and other offices and their employees, and all agents, contractors, consultants, attorneys and law firms and other persons engaged directly or indirectly (e.g., employee of a consultant) by or under the control of Takata (including all business units and persons previously referred to), who are or, in or after 1990, were involved in any way with any of the following related to the alleged defect in the subject vehicles:

    a.  design, engineering, analysis, modification or production (e.g. quality control);
    b.  testing, assessment or evaluation;
    c.  consideration, or recognition of potential or actual defects, reporting, record-keeping and information management, (e.g., complaints, field reports, warranty information, part sales), analysis, claims, or lawsuits; or
    d.  communication to, from or intended for zone representatives, fleets, dealers, or other field locations, including but not limited to people who have the capacity to obtain information from dealers.

**Document**:  "Document(s)" is used in the broadest sense of the word and shall mean all original written, printed, typed, recorded, or graphic matter whatsoever, however produced or reproduced, of every kind, nature, and description, and all nonidentical copies of both sides thereof, including, but not limited to, papers, letters, memoranda, correspondence, communications, electronic mail (e-mail) messages (existing in hard copy and/or in electronic storage), faxes, mailgrams, telegrams, cables, telex messages, notes, annotations, working papers, drafts, minutes, records, audio and video recordings, data, databases, other information bases, summaries, charts, tables, graphics, other visual displays, photographs, statements, interviews, opinions, reports, newspaper articles, studies, analyses, evaluations, interpretations, contracts, agreements, jottings, agendas, bulletins, notices, announcements, instructions, blueprints, drawings, as-builts, changes, manuals, publications, work schedules, journals, statistical data, desk, portable and computer calendars, appointment books, diaries, travel reports, lists, tabulations, computer printouts, data processing program libraries, data processing inputs and outputs, microfilms, microfiches, statements for services, resolutions, financial statements, governmental records, business records, personnel records, work orders, pleadings, discovery in any form, affidavits, motions, responses to discovery, all transcripts, administrative filings and all mechanical, magnetic, photographic and electronic records or recordings of any kind, including any storage media associated with computers, including, but not limited to, information on hard drives, floppy disks, backup tapes, and zip drives, electronic communications, including but not limited to, the Internet and shall include any drafts or revisions pertaining to any of the foregoing, all other things similar to any of the foregoing, however denominated by Takata, any other data compilations from which information can be obtained, translated if necessary, into a usable form and any other documents.  For purposes of this request, any document, which contains any note, comment,

3

addition, deletion, insertion, annotation, or otherwise comprises a nonidentical copy of another document shall be treated as a separate document subject to production. In all cases where original and any non-identical copies are not available, "document(s)" also means any identical copies of the original and all non-identical copies thereof. Any document, record, graph, chart, film or photograph originally produced in color must be provided in color. Furnish all documents whether verified by the manufacturer or not. If a document is not in the English language, provide both the original document and an English translation of the document.

In order for my staff to evaluate the alleged defect, certain information is required. Pursuant to 49 U.S.C. § 30166, please provide numbered responses to the following information requests. Please repeat the applicable request verbatim above each response. After Takata's response to each request, identify the source of the information and indicate the last date the source updated the information prior to the preparation of the response. Insofar as Takata has previously provided a document to ODI, Takata may either produce it again, or identify the document, the document submission to ODI in which it was included and the precise location in that submission where the document is located. When documents are produced, the documents shall be produced in an identified, organized manner that corresponds with the Information Request letter (including the subparts). When documents are produced and the documents would not, standing alone, be self-explanatory, the production of documents shall be supplemented and accompanied by explanation.

In responding to all of the below requests, in addition to the duplicate hard copies, please furnish in electronic form any tables, charts, database or spreadsheet being provided in the IR response. Such responses should be submitted in files compatible with common office automation products such as Microsoft Word/Excel/Access file formats. Please display any date information in the following date code format: day-month-year; Example: 01-Dec-1998.

1. State all the vehicle models that use the subject component in MY 1993 and 1994 vehicles. Identify seat positions where the subject component is used.

2. State the number of subject components sold by buckle date code, buckle lot quantity, latch plate date code, Make, Model, MY, seat position, color, Takata part number, manufacturer part number, manufacturer assembly plant and shipment arrival date at the vehicle assembly plant. Provide the data on a spreadsheet table format of Enclosure 1. Provide a separate table for each position of each vehicle. What is the first and last year that the Type 521 buckle assembly was used in these positions on these vehicles?

3. From the start of the subject component fabrication for MY1993 vehicle production, identify and describe all modifications or changes made by or on behalf of Takata in the manufacture (including tooling, inspection gates and die changes), assembly, or design of the subject component that relate, or could relate to the alleged defect including but not limited to the detail design of the internal sliding latch plates. The following information must be included for each such modification or change:

4

    a.  the date, or approximate date on which the modification or change was incorporated into production;

    b.  a description of the modification or change;

    c.  the reason for the modification or change; and

    d.  the first buckle date code that used the changed parts.

4.  Furnish the assembly drawings for all positions of the subject component and all of its lower level drawings including the internal sliding latch plates as shown in Enclosure 2 used for the MY 1994 Isuzu Rodeo and the Nissan Pathfinder. Furnish all drawing revisions up to present date for the internal sliding latch plate part of above. Provide two subject components and two mating male-tongue parts (less webbing material) illustrating the defect as identified in initial recall of 96V-170. Furnish also the specification and drawing used to fabricate/modify the "gage tool" to measure the "17.4 mm dimension" on the latch plate.

5.  Identify and provide copies of all documents reflecting any study, survey, test or investigation that led to the initial recall, 96V-170 back in 1996. Include all pertinent documents (including color photographs) regardless of whether they are in interim, draft, or final form. Identify chronological order the events and the number of vehicle/buckle assemblies with the problem.

6.  Explain how Takata determined the scope of the defective buckles recalled under 96V-170. Provide the documents that were transmitted to Nissan, Isuzu and Honda and the action that they need to take to determine the vehicle VIN ranges in their respective recalls.

7.  Enclosure 3 contains two letters provided to ODI by a plaintiff attorney. Please furnish Takata's assessment of the allegation outlined in the letters. Provide any joint test, inspection report and photographs that are available.

8.  Furnish Takata's assessment as to why the vehicles identified in Enclosure 4 should not have been included in the initial recall of 96V-170.

This letter is being sent to Takata pursuant to 49 U.S.C. §30166, which authorizes NHTSA to conduct any investigation that may be necessary to enforce Chapter 301 of Title 49. It constitutes a new request for information. Takata's failure to respond promptly and fully to this letter could subject Takata to civil penalties pursuant to 49 U.S.C. § 30165 or lead to an action for injunctive relief pursuant to 49 U.S.C. § 30163. (Other remedies and sanctions are available as well.) Please note that maximum civil penalties under 49 U.S.C. § 30165 have increased as a result of the recent enactment of the Transportation Recall Enhancement, Accountability, and Documentation (TREAD) Act, Public Law No. 106-414 (signed November 1, 2000). Section 5(a) of the TREAD Act, codified at 49 U.S.C. § 30165(b), provides for civil penalties of up to $5,000 per day, with a maximum of $15 million for a related series of violations, for failing or refusing to perform an act required under 49 U.S.C. § 30166. This includes failing to respond to ODI information requests.

5

If Takata cannot respond to any specific request or subpart thereof, please state the reason why it is unable to do so. If on the basis of attorney client, attorney work product, or other privilege, Takata does not submit one or more requested documents or items of information in response to this information request, Takata must provide a privilege log identifying each document or item withheld, and stating the date, subject or title, name and position of the person/s from, and the person/s to whom it was sent, and the name and position of any other recipient (to include all carbon copies or blind carbon copies), the nature of that information or material, and the basis for the claim of privilege and why that privilege applies.

Takata's response to this letter, in duplicate, together with a copy of any confidentiality request, must be submitted to this office by August 9, 2002. Please include in Takata's response the identification codes referenced on page one of this letter. If Takata finds that it is unable to provide all of the information requested within the time allotted, Takata must request an extension from Thomas Z. Cooper at (202) 366-5218 no later than five business days before the response due date. If Takata is unable to provide all of the information requested by the original deadline, it must submit a partial response by the original deadline with whatever information Takata then has available, even if Takata has received an extension.

If Takata claims that any of the information or documents provided in response to this information request constitute confidential commercial material within the meaning of 5 U.S.C. § 552(b)(4), or are protected from disclosure pursuant to 18 U.S.C. § 1905, Takata must submit supporting information together with the materials that are the subject of the confidentiality request, in accordance with 49 CFR Part 512, to the Office of Chief Counsel (NCC-30), National Highway Traffic Safety Administration, Room 5219, 400 Seventh Street, S.W., Washington, D.C. 20590. Takata is required to submit two copies of the documents containing allegedly confidential information (except only one copy of blueprints) and one copy of the documents from which information claimed to be confidential has been deleted.

If you have any technical questions concerning this matter, please call Peter C. Ong of my staff at (202) 366-0583.

Sincerely,

Thomas Z. Cooper, Chief
Vehicle Integrity Division
Office of Defects Investigation

Enclosures:  1. Seat Belt Assembly Information  (see attached file)
2. Type 521 Release Buckle Internal Sliding Latch Plates
3. Letters Provided by Attorney (2/5/02 & 3/6/02)
4. VOQ 977464, 531242 and 982376 (see attached files)

## Seat Belt Assembly Information

MY: _____
Model: _____
Response to IR: Q2

| Buckle Date Code | Buckle Lot Quantity | Sliding Latch Plate Date Code | Make | Model | MY | Seat Position | Color | Takata Part Number | Manufacturer Part Number | Manufacturer Assy Plant | Shipment Date to Assembly Plant |
|---|---|---|---|---|---|---|---|---|---|---|---|
| TBD | TBD | TBD | TBD | | TBD | TBD | TBD | TBD | TBD | TBD | TBD |
| | | | | Rodeo | 1993 | | | | | | |
| | | | | Rodeo | 1993 | | | | | | |
| | | | | Rodeo | 1993 | | | | | | |
| | | | | Rodeo | 1993 | | | | | | |
| | | | | Rodeo | 1993 | | | | | | |
| | | | | Rodeo | 1993 | | | | | | |
| | | | | Rodeo | 1993 | | | | | | |
| | | | | Rodeo | 1993 | | | | | | |
| | | | | Rodeo | 1993 | | | | | | |
| | | | | Rodeo | 1993 | | | | | | |
| | | | | Rodeo | 1993 | | | | | | |
| | | | | Rodeo | 1994 | | | | | | |
| | | | | Rodeo | 1994 | | | | | | |
| | | | | Rodeo | 1994 | | | | | | |
| | | | | Rodeo | 1994 | | | | | | |
| | | | | Rodeo | 1994 | | | | | | |
| | | | | Rodeo | 1994 | | | | | | |
| | | | | Rodeo | 1994 | | | | | | |
| | | | | Rodeo | 1994 | | | | | | |
| | | | | Rodeo | 1994 | | | | | | |
| | | | | Rodeo | 1994 | | | | | | |
| | | | | Rodeo | 1994 | | | | | | |
| | | | | Rodeo | 1994 | | | | | | |
| | | | | Rodeo | 1994 | | | | | | |

Enclosure 2

Takata Type 521 Release Buckle Internal Sliding Latch Plates



Exhibit D

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Mr. Jeffery Marsee                                                                       NSA-12pco
Chief Representative, Emissions & Safety                                        RQ02-009
Isuzu Motors America, Inc.
46401 Commerce Center Drive
Plymouth, Michigan 48170

Dear Mr. Marsee:

This letter is to advise you that the Office of Defects Investigation (ODI) of the National
Highway Traffic Safety Administration (NHTSA) has opened a Recall Query (RQ02-009) for
seat belt release buckle assembly that can false latch or release during a crash on Model Year
(MY) 1994 Isuzu Rodeo, Pickup and Amigo vehicles.  During the original recall campaign (96V-
170), Isuzu Motors also conducted the recall campaign for the Honda Passport.

The safety recall involves a certain quantity of model year (MY) 1994 vehicles having Takata
(Type 521) front seat belt buckles that may have latching problems due to incorrectly
manufactured parts.  Vehicles built during a certain time period and having certain Vehicle
Identification Numbers (VINs) were recalled and inspected.  During the inspection process, seat
belt buckle assemblies that fell within certain lot/date codes were replaced.

ODI has received three consumer complaints alleging that the front seat belts released during a
crash and resulted in occupant injury.  The two Isuzu Rodeo complaints were not the subject of
the original recall (96V-170).  The Honda Passport complaint also was not the subject of the
original recall, but the vehicle's VIN, 4S6CG58E1R4401555, was '573 units' from the
beginning VIN of 4S6CY58VR4402326 as identified during recall.  Copies of the ODI consumer
complaints are provided in Enclosure 1.

Unless otherwise stated in the text, the following definitions apply to this information request:

> **Subject vehicles**: all MYs 1993-1994 Isuzu Rodeo, Pickup and Amigo vehicles sold in the
> United States using the subject components.  In addition, since Isuzu conducted the original
> recall campaign for the Honda Passport, please include the Honda Passport vehicle
> information if applicable.

**Subject component**: Takata (Type 521) seat belt release buckle assembly used in all seating positions in the vehicle.

**Alleged defect**: false latching, unintended release, partial engagement, unable to latch, release button binding or jamming in the subject component.

**Isuzu**: Isuzu Motors America, Inc., all of its past and present officers and employees, whether assigned to its principal offices or any of its field or other locations, including all of its divisions, subsidiaries (whether or not incorporated) and affiliated enterprises and all of their headquarters, regional, zone and other offices and their employees, and all agents, contractors, consultants, attorneys and law firms and other persons engaged directly or indirectly (e.g., employee of a consultant) by or under the control of Isuzu (including all business units and persons previously referred to), who are or, in or after 1994, were involved in any way with any of the following related to the alleged defect in the subject vehicles:

   a.  design, engineering, analysis, modification or production (e.g. quality control);
   b.  testing, assessment or evaluation;
   c.  consideration, or recognition of potential or actual defects, reporting, record-keeping and information management, (e.g., complaints, field reports, warranty information, part sales), analyses, claims, or lawsuits; or
   d.  communication to, from or intended for zone representatives, fleets, dealers, or other field locations, including but not limited to people who have the capacity to obtain information from dealers.

**Document**: "Document(s)" is used in the broadest sense of the word and shall mean all original written, printed, typed, recorded, or graphic matter whatsoever, however produced or reproduced, of every kind, nature, and description, and all nonidentical copies of both sides thereof, including, but not limited to, papers, letters, memoranda, correspondence, communications, electronic mail (e-mail) messages (existing in hard copy and/or in electronic storage), faxes, mailgrams, telegrams, cables, telex messages, notes, annotations, working papers, drafts, minutes, records, audio and video recordings, data, databases, other information bases, summaries, charts, tables, graphics, other visual displays, photographs, statements, interviews, opinions, reports, newspaper articles, studies, analyses, evaluations, interpretations, contracts, agreements, jottings, agendas, bulletins, notices, announcements, instructions, blueprints, drawings, as-builts, changes, manuals, publications, work schedules, journals, statistical data, desk, portable and computer calendars, appointment books, diaries, travel reports, lists, tabulations, computer printouts, data processing program libraries, data processing inputs and outputs, microfilms, microfiches, statements for services, resolutions, financial statements, governmental records, business records, personnel records, work orders, pleadings, discovery in any form, affidavits, motions, responses to discovery, all transcripts, administrative filings and all mechanical, magnetic, photographic and electronic

records or recordings of any kind, including any storage media associated with computers, including, but not limited to, information on hard drives, floppy disks, backup tapes, and zip drives, electronic communications, including but not limited to, the Internet and shall include any drafts or revisions pertaining to any of the foregoing, all other things similar to any of the foregoing, however denominated by Isuzu, any other data compilations from which information can be obtained, translated if necessary, into a usable form and any other documents. For purposes of this request, any document, which contains any note, comment, addition, deletion, insertion, annotation, or otherwise comprises a nonidentical copy of another document shall be treated as a separate document subject to production. In all cases where original and any non-identical copies are not available, "document(s)" also means any identical copies of the original and all non-identical copies thereof. Any document, record, graph, chart, film or photograph originally produced in color must be provided in color. Furnish all documents whether verified by the manufacturer or not. If a document is not in the English language, provide both the original document and an English translation of the document.

In order for my staff to evaluate the alleged defect, certain information is required. Pursuant to 49 U.S.C. § 30166, please provide numbered responses to the following information requests. Please repeat the applicable request verbatim above each response. After Isuzu's response to each request, identify the source of the information and indicate the last date the source updated the information prior to the preparation of the response. Insofar as Isuzu has previously provided a document to ODI, Isuzu may either produce it again, or identify the document, the document submission to ODI in which it was included and the precise location in that submission where the document is located. When documents are produced, the documents shall be produced in an identified, organized manner that corresponds with the Information Request letter (including the subparts). When documents are produced and the documents would not, standing alone, be self-explanatory, the production of documents shall be supplemented and accompanied by explanation.

In responding to all of the below requests, in addition to the duplicate hard copies, please furnish in electronic form any tables, charts, database or spreadsheet being provided in the IR response. Such responses should be submitted in files compatible with common office automation products such as Microsoft Word/Excel/Access file formats. Please display any date information in the following date code format: day-month-year; Example: 01-Dec-1998.

1. State the number of subject vehicles sold in the United States by Make, Model, MY, assembly plant, built month, range of monthly VINs, monthly and yearly totals. Provide the data on a spreadsheet table format of Enclosure 2.

2. State the number, as shown in the spreadsheet format of Enclosure 3, and provide copies of all the following, from all sources, of which Isuzu is aware and which relate, or could relate to the alleged defect in the subject vehicles (a separate spreadsheet is required for each model of vehicle):

4

a.  owner/fleet reports;
b.  field reports;
c.  crash/incident claims (total for categories a, b, d, e, and f.);
d.  subrogation claims;
e.  lawsuits; and
f.  third-party arbitration proceedings (where Isuzu is a party to the arbitration).

In addition, please list and collate your responses for each category ("a" through "f") in tabular form as shown in Enclosure 4 and sorted by date of claim. A separate table should be generated for each category. If there are no reports/claims in a requested category, please state "none" in the data row. If a fleet vehicle is involved, the name of the fleet, and the name and telephone number of a contact person at that fleet shall be provided. For category items "a" through "d", please provide all related information and reports in additional to the tabular information of above, whether or not Isuzu has verified each one. For category items "e" and "f", a one page summary identifying the caption, court, docket number, incident date, legal filing date, MY, VIN, build date, mileage, summary of vehicle damage cost (if any), description of injury, and disposition of the matter. In addition, copies of the police accident report, color photographs, and medical reports shall be included on items "e" and "f" if available. Other basic information (consumer full name, address, state of residence, phone, legal point of contact etc…) though not requested in the tables, shall be available in the electronic file.

3.  Please outline Isuzu's vehicle warranty coverage concerning restraint system in general and specifically seat belt assemblies on the subject vehicles. What is the standard warranty (months after purchase and mileage) for restraints systems such as airbags modules, electronic computer, wiring system/harness and seat belts? Provide details of any additional restraint system warranty coverage plans available to the consumer under the extended warranty program. What is the percentage of subject vehicle (for each MY involved) owners that elects the various extended warranty options? If multiple extended warranty options are available, please specify the percentage for each.

4.  Provide in electronic form the records of warranty claims related to the subject component. As a minimum, the information in Enclosure 5 shall be extractable from the records. The records shall include and note all extended warranty claims, and request of good will, field or zone adjustments received by Isuzu to date that relate, or could relate to the alleged defect in the subject vehicles.

5.  Provide in electronic form the records of recall services performed under 96V-170 using the same data fields as in Enclosure 5. Provide also a yearly summary of the total number of vehicles inspected under the recall campaign, the number of actual vehicles with seat belt replacement and the total number of seat belts replaced for each make and model of the subject vehicles.

5

6. Provide copies of all service, warranty, and technical documents, including, but not limited to, notices, bulletins, advisories, and other communications that Isuzu provided, or made available, to any dealers, zone offices, field offices, fleet purchasers, or other entities, relating in whole or part to the following:

   a. alleged defect in the subject vehicles; or
   b. a similar potential defect in any other vehicles with similar subject component as in the subject vehicles.

7. From the start of production of the subject component design used in the subject vehicles, identify and describe all modifications or changes made by or on behalf of Isuzu in the manufacture (including tooling and die changes), assembly, or design of the subject component that relate, or could relate to the alleged defect including but not limited to the detail design of the internal sliding latch plates. The following information must be included for each such modification or change:

   a. the date, or approximate date on which the modification or change was incorporated into production;
   b. a description of the modification or change;
   c. the reason for the modification or change;
   d. the part numbers of the original part and modified part;
   e. whether the original unmodified component was withdrawn from sale, and if so, when; and whether the modified or changed components can be interchanged with earlier production components; and
   f. identify all changes made to service parts for the subject component, the date such changes were made and the disposition of unused service parts held in inventory.

8. Furnish the assembly drawings for all positions of the subject component and all of its lower level drawings including the internal sliding latch plates as shown in Enclosure 6. Furnish the revision level drawings that reflect the parts used in the subject vehicles as well as the latest revision level drawings. What other seating positions in the subject vehicles and other MY1993-1994 Isuzu vehicles use the subject component. Provide five subject components and five mating male-tongue parts (less webbing material).

9. Describe typically the number of internal sliding latch plates being fabricated in a given batch/lot for use in the buckle assembly. Are they date code or lot marked on the part? Are these internal sliding latch plates used elsewhere in other buckle assemblies other than the Takata Type 521 release buckle assemblies? Provide in a spreadsheet table the date code/batch number of these parts, number of units, and the final buckle assembly date code and color for the subject vehicles. Provide the Isuzu assembly plant shipment receive dates of each batch/lot of buckle assembly shipped by Takata. Typically, how many days of release buckle assemblies are in stock at the vehicle assembly plant? Typically, how many days of release buckle assemblies do Takata have in stock prior to shipment? If the internal sliding latch plates are used in other vehicles or other than type 521 buckle assemblies, please also provide the same information.

10. Identify and provide copies of all documents reflecting any study, survey, test or investigation pertaining to the alleged defect in the subject vehicles including those performed that resulted in the recall (96V-170) back in 1996. Include all pertinent documents (including color photographs) regardless of whether they are in interim, draft, or final form. If the document concerns any batch or lot of buckle assemblies being rejected at Isuzu or any internal sliding plates being rejected at its suppliers prior to being used in production, identify the date, batch identification number, batch/quantity involved, the initial symptoms for rejection, the root cause of the rejected batch, and the corrective action(s) taken.

11. Provide a description and the logic process performed at Isuzu, from the initial identification of buckle lot codes affected (provided by Tataka) and the resultant determination of the vehicle ranges (by Isuzu) for the initial recall. Include all documents used to make the determination that resulted in the inclusion or exclusion of a particular color buckle assembly (inside or outside the recall VIN scope).

12. State the number of the subject component (by color) that have been: (a) sold for use and (b) replaced under warranty, on the subject vehicles to date, by calendar year, calendar month of sale or replacement, component name, part number (both service and engineering) and model/model year of the vehicle for which they were intended. In addition, where the component is part of an assembly or kit, list the above information for the assembly or kit. If the subject component part number is used in other Isuzu vehicles, state the make, model, MY and affected population of those vehicles. State if a particular color release buckle assembly is unique to the subject vehicle MY or trim line and provide the associated sub-vehicle population.

13. Furnish Isuzu's assessment of the alleged defect in the subject vehicles, including:

   a. all causal or contributory factors;
   b. the failure mode;
   c. root cause of the failures;
   d. its potential effect on occupant safety; and
   e. potential for future occurrences of the alleged defect in the subject vehicles.

This letter is being sent to Isuzu pursuant to 49 U.S.C. §30166, which authorizes NHTSA to conduct any investigation that may be necessary to enforce Chapter 301 of Title 49. It constitutes a new request for information. Isuzu's failure to respond promptly and fully to this letter could subject Isuzu to civil penalties pursuant to 49 U.S.C. § 30165 or lead to an action for injunctive relief pursuant to 49 U.S.C. § 30163. (Other remedies and sanctions are available as well.) Please note that maximum civil penalties under 49 U.S.C. § 30165 have increased as a result of the recent enactment of the Transportation Recall Enhancement, Accountability, and Documentation (TREAD) Act, Public Law No. 106-414 (signed November 1, 2000). Section 5(a) of the TREAD Act, codified at 49 U.S.C. § 30165(b), provides for civil penalties of up to $5,000 per day, with a maximum of $15 million for a related series of violations, for failing or

refusing to perform an act required under 49 U.S.C. § 30166. This includes failing to respond to ODI information requests.

If Isuzu cannot respond to any specific request or subpart thereof, please state the reason why it is unable to do so. If on the basis of attorney client, attorney work product, or other privilege, Isuzu does not submit one or more requested documents or items of information in response to this information request, Isuzu must provide a privilege log identifying each document or item withheld, and stating the date, subject or title, name and position of the person/s from, and the person/s to whom it was sent, and the name and position of any other recipient (to include all carbon copies or blind carbon copies), the nature of that information or material, and the basis for the claim of privilege and why that privilege applies.

Isuzu's response to this letter, in duplicate, together with a copy of any confidentiality request, must be submitted to this office by July 18, 2002. Please include in Isuzu's response the identification codes referenced on page one of this letter. If Isuzu finds that it is unable to provide all of the information requested within the time allotted, Isuzu must request an extension from Thomas Z. Cooper at (202) 366-5218 no later than five business days before the response due date. If Isuzu is unable to provide all of the information requested by the original deadline, it must submit a partial response by the original deadline with whatever information Isuzu then has available, even if Isuzu has received an extension.

If Isuzu claims that any of the information or documents provided in response to this information request constitute confidential commercial material within the meaning of 5 U.S.C. § 552(b)(4), or are protected from disclosure pursuant to 18 U.S.C. § 1905, Isuzu must submit supporting information together with the materials that are the subject of the confidentiality request, in accordance with 49 CFR Part 512, to the Office of Chief Counsel (NCC-30), National Highway Traffic Safety Administration, Room 5219, 400 Seventh Street, S.W., Washington, D.C. 20590. Isuzu is required to submit two copies of the documents containing allegedly confidential information (except only one copy of blueprints) and one copy of the documents from which information claimed to be confidential has been deleted.

8

If you have any technical questions concerning this matter, please call Peter C. Ong of my staff at (202) 366-0583.

Sincerely,

Thomas Z. Cooper, Chief
Vehicle Integrity Division
Office of Defects Investigation

Enclosures:  1.   ODI VOQs as of 2/04/2002 (see attached file)
2.   Vehicle Production (see attached file)
3.   Owner Report/Crash Claims/litigation Claims (see attached file)
4.   Category/Case Summaries (see attached file)
5.   Warranty Claims (see attached file)
6.   Recall Service Records (see attached file)
7.   Type 521 Release Buckle Internal Sliding Latch Plates (see attached file)

9

NHTSA:NSA:ODI
NSA-12:PONG:drd:60583:05/23/02
cc:
NSA-01
NSA-12 Subject/Chron
Document I:Ong\RQ02-009\RQ02-009.IR.Isuzu.doc

10

Enclosure 1

11

12

4S6CG58E1R4401555

RQ02-009.IREncl7

Takata Type 521 Release Buckle Internal Sliding Latch Plates



Encl 6

# Recall Service Reports

| VIN / Unit ID | Year | Model | Trim | | | | | | | | | | | | Fault Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Honda00001 | 1994 | Rodeo/ Passport | LX | 4S6CY58V9R4 402326 | ###### | 8/9/1995 | 8/11/1995 | 7172 | Gray | 8-97004-494-0 | K3X08 | LT Front | H/C 4395901 | K3X08 | RT Front | Seat Belt will not latch, replaced release buckle assembly under warranty. |
| Honda00002 | 1994 | Rodeo/ Passport | EX | 4S6CY58V9R4 402500 | ###### | 7/9/1995 | 8/11/1996 | 7173 | Gray | 8-97004-494-0 | K3X08 | LT Front | H/C 4395901 | K3X08 | RT Front | Seat Belt Jammed, replaced release buckle assembly under warranty. |
| Honda00003 | 1994 | Rodeo/ Passport | DX | 4S6CY58V9R4 415783 | 2/24/1995 | 9/9/1995 | 6/11/1997 | 17172 | Black | 8-97004-494-0 | K3X09 | LT Front | H/C 4395901 | K3X09 | RT Front | Seat Belt false latches, replaced release buckle assembly under warranty. |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |

Fault Code 11 =

Fault Code 12 =

Fault Code 13 =

From:       mmellerl@capecod.netJ
To:         Cauthorne, Margaret <NHTSA>, Jimenez, Alberto <NHT...
Date:       Sat, Feb 21, 1998  4:24 AM
Subject:    WWW VOQ Submission

531242

VEHICLE OWNER'S QUESTIONAIRE
=============================

Submission Time: February 20, 1998 10:10:08PM


       OWNER INFORMATION
       -----------------


   NAI
   ADDF
   Apartr


TELEF
   EMA

Have NHTSA send signature card for authorization: No

       VEHICLE INFORMATION
       -------------------

   VIN: JAACL16EBR7220205
   MAKE: Isuzu
   MODEL: Spacecab
   YEAR: 1994

   ODOMETER: 67,000
   PURCHASE DATE: 05/19/95
   NEW OR USED:

   DEALER NAME: Puritan Pontiac and Isuzu
       ADDRESS: Hyannis, MA 02601

   ENGINE SIZE: 2.6 SOHC
   CYLINDERS: 4

   FUEL INJECTION: on
       TURBO:
       FUEL TYPE:
   ANTILOCK BRAKES: Yes
   CRUISE CONTROL: No
       DRIVETRAIN: Front
   DRIVER AIRBAG:
   PASSENGER AIRBAG:
   3-POINT BELT:
   MOTOR BELT:
   2-POINT BELT: on
       BODY STYLE: Pickup Truck

FAILED COMPONENT(S)/PART(S) INFORMATION

COMPONENT: Seatbelt

PART NAME(S):

LOCATION: Left

NUMBER OF FAILURES: One

DATE(S) OF FAILURES: 02/05/98

MILEAGE AT FAILURE(S): 67,000

SPEED AT FAILURE(S) approx 20

MANUFACTURER CONTACTED: No

NHTSA CONTACTED: No

APPLICABLE ACCIDENT INFORMATION

ACCIDENT: Yes
  FIRE: No

  DRIVER SIDE AIRBAG DEPLOYED: NA
PASSENGER SIDE AIRBAG DEPLOYED: NA

NUMBER OF PERSONS INJURED: One
  NUMBER OF FATALITIES: None
ESTIMATED PROPERTY DAMAGE: Unknown

REPORTED TO POLICE: Yes

INFORMATION ON TIRE FAILURE(S) (IF APPLICABLE)

DOT NUMBER:
TIRE MANUFACTURER:
TIRE NAME:
TIRE SIZE:

ADDITIONAL COMMENTS

I was in a car accident on Feb 5, 98.  I had my seatbelt on and still hit the windshield, resulting in a concussion.

Form Approved: O.M.B. No. 2127-0008

**AUTO SAFETY HOTLINE**
**VEHICLE OWNER'S QUESTIONNAIRE**
NATIONWIDE 1-800-424-9393
DC METRO AREA 205-366-0123

US Department of Transportation
National Highway Traffic Safety Administration

**FOR AGENCY USE ONLY**

DATE RECEIVED **RECEIVED**
014   96 FEB -5 PM 3:53
OFFICE
DEFECTS INVESTIGATION

od. a / rt. df / od. rt / sp.
REFERENCE NO. 977464

### OWNER INFORMATION (TYPE OR PRINT)

NAME and ADDRESS

MARK BEMENT
30111 WINDING BROOK LA
MAGNOLIA TX 77355

DAY TIME TELEPHONE NO. (AREA CODE)
(713)356-1579

Do you authorize NHTSA to provide a copy of this report to the manufacturer of your vehicle? YES ☒ NO ☐
In the absence of an authorization, NHTSA WILL NOT provide your name or address to the vehicle manufacturer.

SIGNATURE OF OWNER   Mark A. Bement   DATE 1-29-96

### VEHICLE INFORMATION

VEHICLE IDENTIFICATION NO. JAACL11L2R7221503
"LOCATED AT BOTTOM OF WINDSHIELD ON DRIVER'S SIDE

VEHICLE MAKE ISUZU TRUCK
VEHICLE MODEL PICKUP
MODEL YEAR 1994

CURRENT ODOMETER READING 36345
DATE PURCHASED NOV 1994 ☒ NEW ☐ USED
DEALER'S NAME, CITY & STATE LELAND STEEPLECHASE FARM HOUSTON, TEXAS
ENGINE SIZE (CCII) 2.3
NO. CYLINDERS 4
☐ TURBO DIESEL ☒ GAS ☐ FUEL INJECTN

TRANSMISSION TYPE ☒ MANUAL ☐ AUTOMATIC
ANTILOCK BRAKES ☒ YES ☐ NO
RESTRAINT SYSTEM ☐ DRIVERSIDE AIRBAG ☐ MOTORBELT ☐ PASSENGERSIDE AIRBAG ☒ 3-POINT BELT ☐ 2-POINT BELT
CRUISE CONTROL ☐ YES ☒ NO
DRIVETRAIN ☒ FRONT ☒ REAR ☐ 4-WHEEL
BODY STYLE ☐ STAWAG ☐ VAN ☒ PK UP TRK ☐ OTHER  4 DR / 2 DR ☐ HATCH BK

### FAILED COMPONENT(S)/PART(S) INFORMATION (REPORT TIRE INFORMATION ON BACK)

COMPONENT 12230000
PART NAME(S) DRIVER SIDE SEATBELT
LOCATION ☐ LEFT ☒ RIGHT ☐ FRONT ☐ REAR
FAILED PART(S) ☐ ORIGINAL ☒ REPLACEMENT

NO. OF FAILURES 1
DATE(S) OF FAILURE(S) 19-DEC-95
MILEAGE AT FAILURE(S) 34000
VEHICLE SPEED AT FAILURE(S) 35
MANUFACTURER CONTACTED DEALER ☒ YES ☐ NO
NHTSA PREVIOUSLY CONTACTED JAN 5,1996 ☒ YES ☐ NO

### APPLICABLE ACCIDENT INFORMATION

ACCIDENT YES ☒ YES ☐ NO
FIRE NO ☐ YES ☒ NO
NUMBER PERSONS INJURED
NUMBER OF FATALITIES
PROPERTY DAMAGE EST$ 750
POLICE REPORTED ☒ YES ☐ NO

### NARRATIVE DESCRIPTION OF FAILURE(S), ACCIDENT(S), INJURY(IES)

THE SEAT BELT DID NOT HOLD THE DRIVER TIGHT ENOUGH IN AN ACCIDENT AT
35MPH. PLEASE DESCRIBE TT
I WAS RAN OFF ROAD + HIT A CONCRETE CULVERT +
DRIVER SEAT BELT DID NOT ENGAGE, BECASE I HIT STEERING
WHEEL + BENT IT. BRUISED CHEST + BROKE LEFT HAND.

CONTINUE ON BACK IF NEEDED

The Privacy Act of 1974 Public Law 93-579
This information is requested pursuant to authority vested in the National Highway Traffic Safety Act and subsequent amendments. You are under no obligation to respond to this questionnaire. Your response may be used to assist the NHTSA in determining whether a manufacturer should take appropriate action to correct a safety defect. If the NHTSA proceeds with administrative enforcement or litigation against a manufacturer, your response, or a statistical summary thereof, may be used in support of the agency's action.

HS-Form 350 (Rev 5-92)

Form Approval: OMB No. 2127-0028

| US DEPARTMENT of Transportation | Auto Safety Hotline **VEHICLE OWNER'S QUESTIONNAIRE** (SUPPLEMENTAL ACCIDENT FORM) NATIONWIDE 1-800-424-9393 DC METRO AREA 366-0123 | FOR AGENCY USE ONLY | | | |
|---|---|---|---|---|---|
| National Highway Traffic Safety Administration | | ID | REFERENCE NO. | DATE RECEIVED | od_dt rt_dt od_rt up_inf |
| | | O14 | 977464 | 05-JAN-96 | |

## ACCIDENT INFORMATION

**Location of initial impact (please mark appropriate box)**

*12:00*

12
11 ☐ ☒ ☒
10 ☐        ←☒ 2

[vehicle diagram]

9 ☐        ☐ 3
8 ☐        ☐ 4

☐        ☐
7        6        5

*1994*
*ISUZU TRUCK*
*PICKUP*

Vehicle speed: *35*

**Is vehicle equipped with a driver side airbag?**
*NO*
☐ YES  ☒ NO  ☐ UNKNOWN

**Did driver side airbag deploy?**
☐ YES  ☒ NO

**Was the driver wearing a seatbelt?**
*LAP/SHOULDER*
☒ LAP/SHOULDER  ☐ LAP ONLY
☐ SHOULDER ONLY  ☐ NO

**Location of the most severe injury sustained by the driver.**
*TORSO*
☐ NO INJURY SUSTAINED BY DRIVER
☐ HEAD  ☐ EYE  ☐ NECK
☒ TORSO  ☐ ARM/UPPER EXTREMITIES
☐ LEG/LOWER EXTREMITIES

**Type of injury to driver.**
*LACERATION*
☐ ABRASION  ☐ LACERATION  ☒ BREAK
☐ BURN  ☐ TRAUMA

**Severity of injury to driver.**
*EMERGENCY ROOM*
☐ NO TREATMENT  ☒ EMERGENCY ROOM
☐ HOSPITALIZATION  ☐ FATAL

**Is vehicle equipped with a passenger side airbag?**
*NO*
☐ YES  ☒ NO  ☐ UNKNOWN

**Did passenger side airbag deploy?**
☐ YES  ☒ NO

**Was the passenger wearing a seatbelt?**
☐ LAP/SHOULDER  ☐ LAP ONLY
☐ SHOULDER ONLY  ☐ NOT WEARING
☒ NO PASSENGER

**Location of the most severe injury sustained by the passenger.**
☒ NO INJURY SUSTAINED BY PASSENGER
☐ HEAD  ☐ EYE  ☐ NECK
☐ TORSO  ☐ ARM/UPPER EXTREMITIES
☐ LEG/LOWER EXTREMITIES

**Type of injury to passenger.**
☐ ABRASION  ☐ LACERATION  ☐ BREAK
☐ BURN  ☐ TRAUMA

**Severity of injury to passenger.**
☐ NO TREATMENT  ☐ EMERGENCY ROOM
☐ HOSPITALIZATION  ☐ FATAL

The Privacy Act of 1974
Public Law 93-579
The information is requested pursuant to authority vested in the National Highway Traffic Safety Act and subsequent amendments. You are under no obligation to respond to this questionnaire. Your response may be used to assist the NHTSA

In determining whether a manufacturer should take appropriate action to correct a safety defect. If the NHTSA proceeds with administrative enforcement or litigation against a manufacturer, your response, or a statistical summary thereof, may be used in support of the agency's action.

HS form 350 (Rev. 11-89)

Form Approved: O.M.B. No. 2127-0008

**AUTO SAFETY HOTLINE**
**VEHICLE OWNER'S QUESTIONNAIRE**

US Department of Transportation
National Highway Traffic Safety Administration

NATIONWIDE 1-800-424-9393
DC METRO AREA 202-366-0123

| FOR AGENCY USE ONLY | |
|---|---|
| DATE RECEIVED | cd  or<br>rt. dt  _____<br>cd .n  _____<br>up-lt  _____ |
| O21   05-APR-96 | REFERENCE NO.<br>982376 |

## OWNER INFORMATION (TYPE OR PRINT)

NAME and ADDRESS

DAY TIME TELEPHONE NO. (AREA CODE)

Do you _____ the manufacturer of your ve_____
In the absence of an authorization, NHTSA WILL NOT provide your name or address to the vehicle manufacturer.

| SIGNATURE OF OWNER | DATE |
|---|---|

## VEHICLE INFORMATION

| VEHICLE IDENTIFICATION NO. | VEHICLE MAKE | VEHICLE MODEL | MODEL YEAR |
|---|---|---|---|
| HS2CYS8V8R4346360 | ISUZU TRUCK | RODEO | 1994 |

LOCATED AT BOTTOM OF WINDSHIELD ON DRIVER'S SIDE

| CURRENT ODOMETER READING | DATE PURCHASED _____<br>☐ NEW  ☐ USED | DEALER'S NAME, CITY & STATE | ENGINE SIZE<br>(CID/CC/L) _____<br>NO. CYLINDERS _____ | ☐ TURBO<br>☐ DIESEL<br>☐ GAS<br>☐ FUEL INJECTN |
|---|---|---|---|---|

| TRANSMISSION TYPE | ANTI LOCK BRAKES | RESTRAINT SYSTEM | CRUISE CONTROL | DRIVETRAIN | BODY STYLE |
|---|---|---|---|---|---|
| ☐ MANUAL<br>☐ AUTOMATIC | ☐ YES<br>☐ NO | ☐ DRIVERSIDE AIRBAG ☐ MOTORBELT<br>☐ PASSENGERSIDE AIRBAG<br>☐ 2-POINT BELT  ☐ 3 POINT BELT | ☐ YES<br>☐ NO | ☐ FRONT<br>☐ REAR<br>☐ 4-WHEEL | STAWAG ____ HATCH BK ____<br>4 DR ____ VAN ____<br>2 DR ____ PK UP ___K ____<br>OTHER ____ |

## FAILED COMPONENT(S)/PART(S) INFORMATION (REPORT TIRE INFORMATION ON BACK)

| COMPONENT | PART NAME(S) | LOCATION | FAILED PART(S) |
|---|---|---|---|
| 12349000 | | ☐ LEFT ☐ RIGHT<br>FRONT ☐ REAR | ☐ ORIGINAL<br>☐ REPLACEMENT |

| NO. OF FAILURES | DATE(S) OF FAILURE(S) _____ 21-MAR-96 _____<br>MILEAGE AT FAILURE(S) _____ 51000 _____<br>VEHICLE SPEED AT FAILURE(S) | MANUFACTURER CONTACTED<br>☐ YES ☐ NO | NHTSA PREVIOUSLY CONTACTED<br>☐ YES ☐ NO |
|---|---|---|---|

## APPLICABLE ACCIDENT INFORMATION

| ACCIDENT | FIRE | NUMBER PERSONS INJURED | NUMBER OF FATALITIES | PROPERTY DAMAGE EST$ | POLICE REPORTED |
|---|---|---|---|---|---|
| ☐ YES **YES** ☐ NO | ☐ YES **NO** ☐ NO | | 1 | 0 | ☐ YES ☐ NO |

### NARRATIVE DESCRIPTION OF FAILURE(S), ACCIDENT(S), INJURY(IES)  YES

*SEAT BELT DID NOT HOLD DRIVER IN A HEAD ON COLLISION, CAUSED DRIVER TO GO INTO WINDSHIELD. *AK*

CONTINUE ON BACK IF NEEDED

The Privacy Act of 1974
Public Law 93-579
This information is requested pursuant to authority vested in the National Highway Traffic Safety Act and subsequent amendments. You are under no obligation to respond to this questionnaire. Your response may be used to assist the NHTSA in determining whether a manufacturer should take appropriate action to correct a safety defect. If the NHTSA proceeds with administrative enforcement or litigation against a manufacturer, your response, or a statistical summary thereof, may be used in support of the agency's action.

HS Form 350 (Rev. 5-92)

**DOT Auto Safety Hotline**

**Vehicle Owner's Questionnaire (VOQ)**

NATIONWIDE 1-888-DASH-2-DOT

1-888-327-4236

www.nhtsa.dot.gov/hotline

US Department of Transportation / National Highway Traffic Safety Administration

**OWNER INFORMATION (Type or Print)**

VERA   IBRAHIM   727783

112 WESTWOOD AVE APT 2

LONG BRANCH   NJ   07740

**VEHICLE INFORMATION**

4S6CG58E1R4401555

HONDA TRUCK   PASSPORT   1994

**FAILED COMPONENT(S)/PART(S) INFORMATION**

STEERING/STEERING ASSIST
INTERIOR SYSTEMS/ACTIVE RESTRAINTS/BELT BUCKLES

**APPLICATION INCIDENT INFORMATION**

**NARRATIVE DESCRIPTION OF FAILURE(S), INCIDENT(S), INJURY(IES)**

CONSUMER LOST CONTROL OF VEHICLE WHILE DRIVING 35 MPH, AND VEHICLE WENT DOWN AN EMBANKMENT, THEN ROLLED OVER. DRIVER'S SEAT BELT RELEASED, AND DRIVER WAS EJECTED FROM VEHICLE. SHE SUFFERED A BROKEN ARM AND HEAD INJURIES. FRONT PASSENGER WAS INJURED, NOT SEVERELY DUE TO SEATBELT ALSO RELEASING. VEHICLE WAS TOTALLED. *AK

I was cut off on the left when I swerved away. Lost Control of vehicle. Suffered fractured right elbow, lacerations & cold burn on left shoulder, elbow, lacerations, head injuries + neck + back injuries.